[Civ. No. 47782. Second Dist., Div. Three. July 29, 1976.]

C. WALTER LERETTE, Plaintiff and Appellant, v.
DEAN WITTER ORGANIZATION, INC., et al.,
Defendants and Respondents.

**COUNSEL**

Thomas Lisle Schechter for Plaintiff and Appellant.

Stephens, Jones, La Fever & Smith, Eugene W. Bell, John F. Busetti and Ford R. Smith for Defendants and Respondents.

**OPINION**

**COBEY, Acting P. J.**—This is an appeal from a judgment of dismissal entered after respondents' (hereinafter collectively identified as Dean Witter) general demurrer to appellant's complaint (amended per stipulation) was sustained without leave to amend. The appeal lies. (Code Civ. Proc., § 904.1, subd. (a).)

### FACTS[1]

On September 12, 1975, one of the individual respondents, Paul Dubow, employed as assistant general counsel for Dean Witter in its San Francisco office, sent a letter to the chairman of the board of a Ventura bank of which appellant was president.[2] The letter accused appellant of intentionally misrepresenting the financial condition of one Alfred Hamilton to whom Dean Witter subsequently extended credit. Hamilton defaulted on his obligation and Dubow's letter indicated that unless a settlement could be reached, Dean Witter planned to sue appellant and the bank for violation of federal and state securities laws and for fraud and misrepresentations.

According to the complaint, Dubow sent the September 12 letter with a malicious intent to defame appellant and to damage his substantial

---

[1]On appeal from a judgment of dismissal sustaining a demurrer, we consider as true all the factual allegations stated in appellant's complaint. (*Aweeka* v. *Bonds,* 20 Cal.App.3d 278, 280 [97 Cal.Rptr. 650].)

[2]The complete text of the letter is reproduced in the appendix to this decision.

reputation as a bank president. Dubow also intended to inflict significant mental distress upon appellant by sending the letter. Further, appellant's reputation was damaged and he did suffer substantial emotional harm as a result thereof.

## QUESTION PRESENTED

This appeal principally presents the question of whether section 47, subdivision 2 of the Civil Code (hereinafter referred to as section 47)[3] conferred an absolute privilege upon respondents to publish the subject letter.[4] As a subsidiary issue, we must also determine whether the privilege, if applicable, also operates to prevent a suit for intentional infliction of emotional distress based upon the same publication. Our conclusions are that respondents' communication was absolutely privileged and the privilege also bars any cause of action for emotional harm. Therefore we will affirm the judgment for the reasons stated below.

## DISCUSSION

Appellant contends that section 47 is inapplicable to the subject communication because (a) the letter was not sent in any judicial proceeding actually underway and (b) defendant Dubow was not, at the time the letter was written or thereafter, Dean Witter's counsel in the judicial proceeding to which the letter refers.[5]

### A.  The Requirement of Communication in a Judicial Proceeding

■  The purpose of section 47 is to afford litigants the utmost freedom of access to the courts in order to secure and defend their rights

---

[3]The section reads in pertinent part: "A privileged publication or broadcast is one made . . . [¶] 2. In any . . . judicial proceeding . . . ."

[4]Dean Witter's general demurrer could not have been sustained on the grounds of the related privilege of a communication to an interested party by one who is also interested (Civ. Code, § 47, subd. 3) because such a privilege is conditioned upon an absence of malice. (See *Kapellas* v. *Kofman*, 1 Cal.3d 20, 29 [81 Cal.Rptr. 360, 459 P.2d 912]; *Toney* v. *State of California*, 54 Cal.App.3d 779, 793 [126 Cal.Rptr. 869].) Appellant's complaint, which we here must accept as stating true facts, plainly alleges that the letter was sent with a malicious intent.

[5]Two other requirements for the applicability of the section 47 privilege have been identified. The communication (a) must have some connection or logical relation to the action, and (b) must be made to achieve the objects of that litigation. (*Bradley* v. *Hartford Acc. & Indem. Co.*, 30 Cal.App.3d 818, 825 [106 Cal.Rptr. 718].) These requirements basically demand that the offending communication be relevant to the judicial proceeding. In the instant case it is unchallenged that the letter was relevant to the lawsuit initiated shortly after the letter was written and after it failed to achieve its objective of settlement.

(*Albertson* v. *Raboff*, 46 Cal.2d 375, 380 [295 P.2d 405]), and, to that end, to protect attorneys during the course of their representation of their clients. (*Smith* v. *Hatch,* 271 Cal.App.2d 39, 50 [76 Cal.Rptr. 350]; *Friedman* v. *Knecht,* 248 Cal.App.2d 455, 462 [56 Cal.Rptr. 540].) As any competent attorney is aware, access to the courts is not an end in itself but only one means to achieve satisfaction for a client. If this can be obtained without resort to the courts—even without the filing of a lawsuit—it is incumbent upon the attorney to pursue such a course of action first. (See ABA Code of Prof. Ethics, canon 15; Cal. State Bar, Rules Prof. Conduct, rule 6-101(2).) It is equally well established legal practice to communicate promptly with a potential adversary, setting out the claims made upon him, urging settlement, and warning of the alternative of judicial action. (See 4 Cal. Practice (1968 ed.) Settlement, §§ 22:1, 22:17, pp. 511, 525.) Dubow's September 12 letter is a typical example of such a missive.

For the above reasons, the privilege to defame in the course of judicial proceedings is not limited to statements during trial but can extend, notwithstanding the phrasing of the statute, to steps taken prior thereto. (See 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 297, pp. 2567-2568; Annot., Defamation—Pretrial Procedures (1969) 23 A.L.R. 3d 1172, 1174. See also *Johnston* v. *Cartwright* (8th Cir. 1966) 355 F.2d 32, 37 (applying similar Iowa privilege to communication of lawyer prior to commencement of lawsuit but where "[a]ll signs pointed to incipient· litigation and to a necessity for· protective action").) (Cf. *Martin* v. *Kearney,* 51 Cal.App.3d 309, 311 [124 Cal.Rptr. 281] (holding absolutely privileged a communication to an administrative agency designed to prompt action by that agency); *Frank Pisano & Associates* v. *Taggart,* 29 Cal.App.3d 1, 25 [105 Cal.Rptr. 414] (holding absolutely privileged the filing of a mechanic's lien prior to the judicial proceeding to foreclose it).)

The Restatement also describes the privilege as extending to "communications preliminary to a proposed judicial proceeding." (Rest., Torts, § 586 & com. a. See also Veeder, *Absolute Immunity in Defamation* (1909) 9 Colum.L.Rev. 463, 487-488.) California courts have followed this section of the Restatement. (See *Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 378; *Thornton* v. *Rhoden,* 245 Cal.App.2d 80, 90 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152].) ■ Therefore, we hold that a

demand letter such as that sent by Dubow is fully privileged under section 47 as preliminary to a judicial proceeding.[6]

## B. *Relationship of the Attorney to the Judicial Proceedings*

Appellant also contends that even if the section 47 privilege extends to matters preliminary to judicial proceedings, any attorney so privileged must participate in that judicial proceeding as counsel.[7] Appellant points out that Dubow did not serve as Dean Witter's counsel in the lawsuit filed after the letter was written. Appellant cites Restatement, Torts, section 586 and *Bradley* v. *Hartford Acc. & Indem. Co., supra,* to support his contention.

It is true that the Restatement limits an attorney's privilege to "a judicial proceeding in which he participates as counsel." ▮ But in view of the same section's embrace of communications "preliminary to a proposed judicial proceeding," we can confidently say that at the time Dubow composed and sent the letter he was indeed participating counsel.

In *Bradley,* the court found section 47 inapplicable to an attorney's communication where there was no evidence that the attorney was counsel of record in the action which the attorney claimed established the privilege. *(Id.,* at p. 826.) A closer examination of the facts of *Bradley,* however, reveals that its statement is inapposite to the present case. *Bradley* involved defamatory statements and spurious "pleadings" published in the midst of litigation. *(Id.,* at p. 822.) Thus, it was appropriate for the court to attach significance to the fact that the attorney-defendant was not an attorney of record in the action then pending. In contrast, in the present case, when Dubow wrote the defamatory letter, there could not possibly have been an "attorney of record" within the meaning of *Bradley* because no judicial proceeding had yet begun.

Considering the legal business of major corporations such as Dean Witter, it is not an unreasonable extension of section 47 to apply it to

---

[6]We recognize that the fact that a suit eventually is filed does not protect all defamatory communications made prior to the filing. But most potential abuse of this privilege for prelitigation communications can be prevented by enforcement of the relevancy requirement discussed in footnote 5 *ante* (See, e.g., *Bradley* v. *Hartford Acc. & Indem. Co., supra,* 30 Cal.App.3d at p. 826; *Younger* v. *Solomon,* 38 Cal.App.3d 289, 301-302 [113 Cal.Rptr. 113].)

[7]Appellant does not dispute the fact that the privilege *may* apply to an attorney's communications. (See *Jordan* v. *Lemaire,* 222 Cal.App.2d 622, 625 [35 Cal.Rptr. 337].)

communications of any attorney retained by a client expecting to be a party to threatened litigation so long as the attorney has been employed by the client with reference to the impending judicial proceeding or the controversy underlying it. (See 30 Cal.Jur.2d, Libel and Slander, § 160, p. 782.)

## C. *Cause of Action for Intentional Infliction of Emotional Harm*

■ To allow appellant to proceed with this cause of action would substantially defeat the purpose of the privilege enunciated in section 47. It would exalt a judicially derived cause of action (see Prosser, *Intentional Infliction of Mental Suffering: A New Tort* (1939) 37 Mich. L.Rev. 874) above clear legislative intention and operate as a severe deterrent to communications otherwise protected. Therefore, no such cause of action, based upon the defamatory nature of a communication which is itself privileged under the defamation laws, can be permitted. (See *Agostini* v. *Strycula,* 231 Cal.App.2d 804, 808 [42 Cal.Rptr. 314]; *Kachig* v. *Boothe,* 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393].)

### DISPOSITION

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 6, 1976.

### APPENDIX "A"

### DEAN WITTER & CO.
#### INCORPORATED

45 Montgomery Street—San Francisco, California 94105
Telephone (415) 392-7211

September 12, 1975

Mr. Emilio J. Lagomarsino
Chairman of the Board
American Commercial Bank
494 East Main Street
Ventura, California 93001

Dear Mr. Lagomarsino:

In October, 1974, Mr. C. Walter Lerette, the president of your bank, acting within the apparent scope of his authority, introduced one Alfred L. Hamilton to Mr. Stanley

Mayper, an account executive at our Ventura branch.

Mr. Lerette's purpose was to induce Dean Witter & Co. Incorporated to loan money to Mr. Hamilton, which said loan was to be collateralized by shares of American Agronomics stock presumably owned by Mr. Hamilton. Mr. Lerette represented to Dean Witter that Mr. Hamilton was a man of substance financially. He also led Dean Witter to believe that Mr. Hamilton had purchased the stock with his own funds and that he had owned the stock for a substantial period of time.

In fact, none of Mr. Lerette's representations were true. Mr. Hamilton's financial situation was at best modest. Furthermore, Mr. Lerette failed to inform Dean Witter that Mr. Hamilton had purchased his American Agronomics stock entirely with borrowed funds and that $100,000 of this sum came from Mr. James Corr. Mr. Lerette of course knew that Mr. Hamilton represented to Dean Witter that he and Mr. Corr were acting independently of each other with respect to their investment in American Agronomics.

Mr. Lerette also knew, and did not tell Dean Witter, that the stock which your bank was delivering to Dean Witter in each case had just been purchased by Mr. Hamilton from brokerage houses in the Los Angeles area. Not only was Mr. Lerette aware of this practice, he actually assisted Mr. Hamilton on at least one occasion by sending a bank employee to Los Angeles to pick up the stock and deliver it to Dean Witter. Thus, the monies which Dean Witter was loaning to Mr. Hamilton were actually used to buy the stock in question from another brokerage house.

EXHIBIT "A"

Mr. Emilio J. Lagomarsino
September 12, 1975
Page Two

Furthermore, although Mr. Lerette must have known that his representations concerning Mr. Hamilton's honesty and integrity were the prime reasons why Dean Witter loaned substantial sums of money to Mr. Hamilton, he failed to tell Dean Witter that Mr. Hamilton wrote checks payable to a bank in Tampa in the amounts of $400,000 and $500,000 which were dishonored by your bank.

As of September 12, Mr. Hamilton is indebted to Dean Witter in the sum of $419,342.00. This loan is secured by 39,300 shares of American Agronomics. The shares cannot be sold because of an injunction filed by the Securities and Exchange Commission. Even if the shares could be sold, their value would only represent a small fraction of the monies owed to us.

Mr. Hamilton of course is not presently nor has he ever been in a position to repay the monies due us. Thus, Dean Witter stands to lose virtually the entire amount of Mr. Hamilton's indebtedness. Had Mr. Lerette been candid with us, we never would have made a loan to Mr. Hamilton and, ergo, would not have suffered this rather substantial loss.

I am satisfied that, as a result of Mr. Lerette's misrepresentations and omissions of fact, Dean Witter & Co. Incorporated has a cause of action against your bank and Mr. Lerette personally for violation of Section 9 of the Securities Act of 1933, Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, Regulation U promulgated by the Federal Reserve Board, and Section 25401 of the California Corporate Securities Law of 1968 as well as for fraud and misrepresentation.

In view of the above, we have retained the Los Angeles firm of Stephens, Jones, LaFever & Smith and have requested that firm to commence, within the next 30 days, a lawsuit against your bank and Mr. Lerette. We are, however, cognizant of the long-standing relationship which we enjoyed with you personally and the good relationship between our firm and the bank prior to this episode. Consequently, we

would much prefer to settle the matter amicably rather than in the courts. If you are also willing to resolve the matter amicably, I would appreciate it if you and/or your counsel would contact me prior to October 7. If I do not hear from you by that time, I will presume that you would prefer to litigate the matter and I will instruct our counsel accordingly.

Very truly yours,

Paul J. Dubow
Assistant General Counsel