[Civ. No. 49426. Second Dist., Div. One. Feb. 8, 1977.]

CATHERINE GREEN KINNAMON, Plaintiff and Appellant, v. STAITMAN & SNYDER et al., Defendants and Respondents.

COUNSEL

Catherine Green Kinnamon, in pro. per., for Plaintiff and Appellant.

Kroll, Edelman, Elser & Wilson and Gerald Kroll for Defendants and Respondents.

OPINION

THOMPSON, J.—In the case at bench, we consider the legal sufficiency of a complaint to state a cause of action for intentional infliction of

emotional distress. ■ We conclude that allegations that a lawyer in violation of rule 7-104 of the California Rules of Professional Conduct threatened plaintiff with criminal prosecution to obtain an advantage in a civil case, that the threat was made with the intent of inflicting emotional distress, and that severe emotional distress resulted, are legally sufficient. Accordingly, we reverse a judgment of dismissal entered after a demurrer to a complaint containing those allegations was sustained without leave to amend.

Appellant filed her first amended complaint alleging that: (1) defendants Bernard Snyder, Jack Staitman, and Jack J. Tannenbaum are attorneys at law retained by defendant John B. O'Cana; (2) to collect a $250 check which plaintiff had given to O'Cana which had been dishonored for insufficient funds, the attorney defendants sent a letter to plaintiff stating, "As you may be aware to issue a check with insufficient funds to cover said check is a misdemeanor. In addition to any Civil remedies my client may have, we also plan to exercise our rights to file a criminal complaint against you for your action herein;" (3) with intent to "injure, frighten and emotionally distress" plaintiff defendants failed to inform her in their letter that fraudulent intent was an element of the crime of issuing a check with insufficient funds; (4) plaintiff suffered emotional distress and physical illness as a result of the letter; and (5) the letter was sent with the knowledge that the threats contained in it were illegal and unethical, with knowledge that the statements were untrue, would cause emotional distress, and were intended to do so; (6) the statements in the letter were made to secure payment of the obligation represented by the check; and (7) plaintiff believed the check to be good when she issued it.

Defendants' general demurrer to the first amended complaint was sustained without leave to amend. This appeal from the resulting judgment of dismissal followed.

The trial court erred in its ruling. The complaint contains allegations which, if true, support a cause of action for intentional infliction of emotional distress.

■ "The elements of a prima facie case for the tort of intentional infliction of emotional distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's

suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. [Citations.] Whether treated as an element of the prima facie case or as a matter of defense, it must also appear that defendants' conduct was unprivileged. [Citations.]" (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

Here the first amended complaint alleges outrageous conduct on the part of the attorney defendants acting as agents of defendant O'Cana. Rule 7-104 of the California Rules of Professional Conduct states in pertinent part: "A member of the State Bar shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action . . . ." Thus, the conduct charged in the complaint is of such an extreme nature as to be "outrageous." (See Anno., Debt Collection—Emotional Distress, 46 A.L.R.3d 772, 780-781; see also *Libarian* v. *State Bar* (1952) 38 Cal.2d 328 [239 P.2d 865]; *Bowden* v. *Spiegel, Inc.* (1950) 96 Cal.App.2d 793 [216 P.2d 571].)

Here the first amended complaint alleges defendants' intention of causing emotional distress, plaintiff's suffering such emotional distress that she became physically ill, and proximate cause.

There remains only the question of whether the first amended complaint discloses that the communication from defendants to plaintiff was privileged.

Citing *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592], defendants argue that it does. In *Lerette,* counsel in the course of his representation of a client directed a letter to the chairman of the board of a bank stating that, absent a settlement, the bank would be sued for violation of the federal and state securities law because the bank's president had misrepresented the financial situation of a person to whom the lawyer's client had extended credit. The Court of Appeal held that the communication was a publication unqualifiedly privileged by Civil Code section 47, subdivision 2, as made in the course of a judicial proceeding and hence could not be the basis for an action in defamation instituted by the bank president. (60 Cal.App.3d at pp. 576-578.) The court held, also, that on the facts there present the privilege applied to defeat a cause of action for intentional infliction of emotional distress because "To allow [the bank president] to proceed with this

cause of action would substantially defeat the purpose of the privilege
. . . ." (60 Cal.App.3d at p. 579.)

Here the situation is materially different from that presented in
*Lerette*. Allowing the instant action for intentional infliction of emotional
distress does not defeat the purpose of the privilege afforded to
communications in the course of litigation by subdivision 2 of Civil Code
section 47. The threat by an attorney to present criminal charges in order
to obtain an advantage in a civil action is one which the Rules of
Professional Conduct proscribe. (Rule 7-104, *supra.*) The threat thus
cannot serve the purpose of litigation. It is a cause for discipline of the
attorney (*Libarian* v. *State Bar, supra,* 38 Cal.2d 328; see also *In re
Sadicoff* (1929) 208 Cal. 555 [282 P. 952]), a proposition totally
inconsistent with a privileged status.

We thus conclude that no privilege insulates defendants from liability
in the case at bench.

The judgment is reversed.

Lillie, Acting P. J., concurred.

**HANSON, J.**—I respectfully dissent.

### BACKGROUND

The following chain of events can reasonably be gleaned from the
skimpy record on appeal:

Plaintiff/appellant Catherine Green Kinnamon (hereinafter plaintiff)
started the chain of events by giving a check in the amount of $250 to
John B. O'Cana which was returned to him because of insufficient funds.

Mr. O'Cana retained the services of Staitman & Snyder, a professional
law corporation (composed of Jack M. Staitman and Bernard Snyder)
and Attorney Jack J. Tannenbaum (hereinfter collectively Attorneys) to
represent him to recover the $250 from plaintiff.

Defendant Attorneys sent a demand-type letter dated December 30,
1975 (received by plaintiff on December 31, 1975), advising her that they
represented Mr. O'Cana in connection with the $250 check she had given

him which was returned because of insufficient funds. The letter contained the following two sentences: "As you may be aware to issue a check with insufficient funds to cover said check is a misdemeanor. In addition to any Civil remedies my [*sic*] client may have, we also plan to exercise our rights to file a criminal complaint against you for your action herein."

Plaintiff appearing in propria persona filed a civil complaint in the superior court entitled "First Amended Complaint for the Intentional Infliction of Emotional Distress" (case No. NWC 48888). In addition to the allegations described in the majority opinion she alleged that "At all times herein mentioned Section 650 of the California Penal Code was in full force and effect and provided as follows: 'SENDING LETTERS THREATENING TO EXPOSE ANOTHER. EVERY PERSON WHO KNOWINGLY AND WILLFULLY SENDS OR DELIVERS TO ANOTHER ANY LETTER OR WRITING WHETHER SUBSCRIBED OR NOT THREATENING TO ACCUSE HIM OR ANOTHER OF A CRIME OR TO EXPOSE OR PUBLISH ANY OF HIS FAILINGS OR INFIRMATIES [*sic*] IS GUILTY OF A MISDEMEANOR.' "

Plaintiff made the further allegation, which we consider as a true factual allegation on appeal from a judgment of dismissal sustaining a demurrer,[1] that "she believed said check to be good when she issued it;" that defendant Attorneys intentionally omitted that the "issuance would be a misdemeanor only if said check was issued with the intent to defraud or with knowledge that there were not sufficient funds to cover said check at the time it was issued" which facts defendant Attorneys knew and "with the purpose and intent to injure, frighten and emotionally distress plaintiff [her] omitted this fact in the letter;" that by reason of this omission she thought she was "guilty of the misdemeanor mentioned" and "became emotionally upset and physically sick" and "was sick, upset, nervous and distressed for a period of five (5) days thereafter. During said period of time Plaintiff [she] was required to and did take medication to calm her nerves in an attempt to alleviate her suffering but did during said period of time suffer severe emotional distress and fear because of Defendants' threat."

Plaintiff prayed for a judgment in the sum of $25,000 for general damages and $25,000 for punitive damages.

Defendant Attorneys filed a demurrer to the original complaint which was sustained with leave to amend and their demurrer to the first

---

[1]See *Aweeka* v. *Bonds* (1971) 20 Cal.App.3d 278, 280 [97 Cal.Rptr. 650].

amended complaint was sustained by the trial court without leave to amend.

Plaintiff, appearing in propria persona, appeals from the order sustaining the demurrer to her first amended complaint without leave to amend. She did not file a reply brief and did not appear at the time of oral argument on January 25, 1977. Defendant Attorneys' counsel appeared and argued their case.

### ISSUES

This appeal turns on whether or not the two above quoted sentences in defendant Attorneys' letter to plaintiff were privileged under Civil Code section 47, subdivision 2 (hereinafter section 47) and/or constitute an insufficient basis for a civil action for intentional infliction of emotional distress as a matter of law.

### DISCUSSION

I conclude that the complaint is not legally sufficient as a matter of law and that the sustaining of defendant Attorneys' demurrer to the first amended complaint without leave to amend was proper in all respects. My reasons, based specifically on the allegations contained in the first amended complaint and on general public policy grounds, are as follows:

FIRST: Plaintiff quotes Penal Code section 650 (hereinafter section 650) *haec verba* in her first amended complaint apparently intending to allege that defendants' violation of that Penal Code section creates a legal basis for her recovery. The majority opinion relies on a violation of rule 7-104 of the California Rules of Professional Conduct as the primary legal basis to support its conclusion that "the conduct charged in the complaint is of such an extreme nature as to be 'outrageous'," thus supplying one of the elements necessary to establish a prima facie case for tort liability predicated on intentional infliction of emotional distress.

Plaintiff's reliance on alleged violation of section 650 as a legal basis of liability is misplaced. The appellate department of the superior court in *People* v. *Deem* (1972) 30 Cal.App.3d Supp. 1 [106 Cal.Rptr. 311], reversing a judgment of conviction for violation of section 650 and dismissing the complaint, 100 years after its enactment in 1872,

declared section 650 unconstitutional on its face and invalid. The court in *Deem* at Supp. 3 said:

"Section 650, however, makes no reference to the use of fear to obtain property. Nor does it require that the threat to accuse one of crime be a wrongful or an unjustified accusation. Thus, a person who sends a letter to a neighbor threatening to file a trespass complaint if the latter continues to trespass over land belonging to the former could be prosecuted under section 650.

"Section 650 also makes it unlawful to expose or publish any of the failings or infirmities of another. Again, the statute does not require bad faith or an intent to injure. Thus, a teacher who sends a letter to a student warning him that continued absence from classes would result in notification of his parents could also be prosecuted under section 650.

"It is difficult to determine the legislative policy of the statute in question. Moreover, the sending of letters and writings is an activity protected by the First Amendment, and hence such activity must be given a preferred position in balancing the various public and private interests involved (see *Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276]; *Saia* v. *New York* (1948) 334 U.S. 558 [92 L.Ed. 1574, 68 S.Ct. 1148]). In the present case the balance clearly favors the protected activity over the restrictions imposed by the statute, which we declare to be unconstitutional on its face.

"The use of the vague terms such as 'failings' and 'infirmities' also raises a question of constitutional proportions. 'A failure of a statute limiting freedom of expression to give fair notice of what acts will be punished and such a statute's inclusion of prohibitions against expressions, protected by the principles of the First Amendment, violates an accused's rights under procedural due process and freedom of speech or press.' (*Winters* v. *New York* (1948) 333 U.S. 507, 509-510 [92 L.Ed. 840, 846-847, 68 S.Ct. 665].)"

SECOND: The majority opinion's reliance on rule 7-104 of the California Rules of Professional Conduct[2] as a legal basis upon which the conduct charged rises to the "outrageous" level necessary to prove up this case is, in my view, also misplaced.

[2]Rule 7-104 of the California Rules of Professional Conduct states in pertinent part: "A member of the State Bar shall not threaten to present criminal, administrative or disciplinary charges to obtain an advantage in a civil action . . ."

Here, without condoning the language used by defendant Attorneys in their letter to plaintiff or passing on whether or not the language constitutes a veiled threat prohibited by rule 7-104, I conclude an alleged violation of that rule, standing alone, cannot serve as the legal basis to support plaintiff's civil action seeking money damages based on an intentional infliction of emotional distress.

The California Rules of Professional Conduct are adopted by the Board of Governors of the State Bar of California [which has over 45,000 members] pursuant to the provisions of the State Bar Act and become effective upon approval by the State Supreme Court.

The Rules of Professional Conduct, as the title implies, are rules generally directed at maintaining the integrity and competence of the legal profession in its relations with the public, and its members' relationship to each other and to the bench. They pertain to such matters as prohibition against solicitation of business, publicity, specializations, fees, conflicts of interest, preserving the identity of client's funds in trust accounts, etc.

Rule 1-100 of the California Rules of Professional Conduct provides that the rules (including rule 7-104) "shall be binding upon all members of the State Bar, *and the wilful breach of any of these rules shall be punishable as provided by law.* Nothing in these rules is intended to limit or supersede any provision of law relating to the duties and obligations of attorneys or the consequences of a violation thereof. . . ." (Italics added.)

Rule 1-100 refers to willful breach being "punishable as provided by law" and does not specifically authorize willful breach as a basis for private civil action for money damages. Further, since the rules do not "limit or supersede any provision of law . . . or the consequences of a violation thereof" *excluding* the rules, I conclude that they were promulgated by the members of the State Bar primarily as ethical guidelines for its members, subjecting any attorney who violates the rules to State Bar "in-house" disciplinary action. In my view the rules were intended to operate as a shield to protect the public from unethical conduct by attorneys but not as a sword to be used to recover money damages *absent* any other "provision of law relating to the duties and obligations of attorneys."

I, therefore, conclude that a violation of rule 7-104, standing alone, is not a legal basis for a civil action by a private citizen seeking money damages for intentional infliction of emotional distress. Here, plaintiff's sole recourse for breach of rule 7-104 is limited to lodging a complaint with the California State Bar which has the authority and the machinery to investigate, conduct hearings, make findings, and take disciplinary action against the offending attorneys, if warranted (see Bus. & Prof. Code, § 6042 et seq. and § 6087 et seq.).

THIRD: I conclude that the sound and well reasoned opinion in *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592] (although factually distinguishable in some respects)[3] insofar as it addresses the public policy behind the privilege contemplated by section 47 is applicable to the case at bench.

Section 47 reads in pertinent part: "A privileged publication or broadcast is one made . . . [¶] 2. In any . . . judicial proceeding . . ."

In *Lerette*, a bank president sued the Dean Witter organization and one of its house counsel for defamation and the intentional infliction with malicious intent for sending a letter to the chairman of the board of a bank of which Lerette was president. The alleged offending demand type letter, signed by Dean Witter's assistant general counsel, accused Lerette of intentionally misrepresenting the financial condition of an individual to whom Dean Witter subsequently extended credit and who had defaulted on his obligation. The letter also indicated that unless a settlement could be reached in an amicable manner within a prescribed time period Dean Witter planned to sue Lerette and the bank for violation of federal and state securities laws and for fraud and misrepresentation.[4]

---

[3]In *Lerette* the offending demand letter contained a threat of civil litigation under the Federal Securities and Exchange Act and the California Corporate Securities Law. Here the offending letter may or may not be construed as a veiled threat of criminal action although plaintiff's complaint is that defendants failed to advise her of all of the elements necessary to constitute a misdemeanor for issuing checks without sufficient funds.

[4]The offending portion of the attorney's demand letter in *Lerette* was as follows:

"I am satisfied that, as a result of Mr. Lerette's misrepresentations and omissions of fact, Dean Witter & Co. Incorporated has a cause of action against your bank and Mr. Lerette personally for violation of Section 9 of the Securities Act of 1933, Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, Regulation U promulgated by the Federal Reserve Board, and Section 25401 of the California Corporate Securities Law of 1968 as well as for fraud and misrepresentation.

"In view of the above, we have retained the Los Angeles firm of Stephens, Jones, LaFever & Smith and have requested that firm to commence, within the next 30 days, a

The trial court in *Lerette* dismissed the complaint without leave to amend. The Court of Appeal affirmed, holding that the demand letter was fully privileged under section 47 and to allow plaintiff to proceed with the cause of action for intentional infliction of emotional harm would defeat the purpose of the privilege of section 47.

The *Lerette* court held the absolute privilege afforded by section 47 is not limited to statements *during* trial but can extend to steps preliminary to a judicial proceeding, such as demand letters, since it is incumbent upon an attorney to settle a case without resort to the courts, if possible. The court at pages 576 and 577 stated: "The purpose of section 47 is to afford litigants the utmost freedom of access to the courts in order to secure and defend their rights (*Albertson* v. *Raboff*, 46 Cal.2d 375, 380 [295 P.2d 405]), and, to that end, to protect attorneys during the course of their representation of their clients. (*Smith* v. *Hatch*, 271 Cal.App.2d 39, 50 [76 Cal.Rptr. 350]; *Friedman* v. *Knecht*, 248 Cal.App.2d 455, 462 [56 Cal.Rptr. 540].) As any competent attorney is aware, access to the courts is not an end in itself but only one means to achieve satisfaction for a client. If this can be obtained without resort to the courts—even without the filing of a lawsuit—it is incumbent upon the attorney to pursue such a course of action first. (See ABA, Code of Prof. Ethics, canon 15; Cal. State Bar, Rules of Prof. Conduct, rule 6-101(2).) It is equally well established legal practice to communicate promptly with a potential adversary, setting out the claims made upon him, urging settlement, and warning of the alternative of judicial action. (See 4 Cal. Practice (1968 ed.) Settlement, §§ 22:1, 22:17, pp. 511, 525.) . . .

" . . . . . . . . . . . . . . . . . .

"The Restatement also describes the priviledge as extending to 'communications preliminary to a proposed judicial proceeding.' (Rest., Torts, § 586 & com. a. See also Veeder, *Absolute Immunity in Defamation* (1909) 9 Colum.L.Rev. 463, 487-488.) California courts have followed this section of the Restatement. (See *Albertson* v. *Raboff*, *supra*,

lawsuit against your bank and Mr. Lerette. We are, however, cognizant of the long-standing relationship which we enjoyed with you personally and the good relationship between our firm and the bank prior to this episode. Consequently, we would much prefer to settle the matter amicably rather than in the courts. If you are also willing to resolve the matter amicably, I would appreciate it if you and/or your counsel would contact me prior to October 7. If I do not hear from you by that time, I will presume that you would prefer to litigate the matter and I will instruct our counsel accordingly." (60 Cal.App.3d at pp. 580-581.)

46 Cal.2d at p. 378; *Thornton* v. *Rhoden,* 245 Cal.App.2d 80, 90 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152].) . . ."

In my opinion to allow plaintiff in the instant case to proceed with her cause of action based on an intentional infliction of emotional harm would result in an unwise policy and defeat the public policy behind the privilege enunciated in section 47. "[I]t would *exalt a judicially derived cause of action* (see Prosser, *Intentional Infliction of Mental Suffering: A New Tort* (1939) 37 Mich.L.Rev. 874) *above clear legislative intention and operate as* a severe *deterrent* to *communications otherwise protected.* . . ." (Italics added.) (*Lerette* v. *Dean Witter Organization, Inc., supra,* 60 Cal.App.3d 573, 579.)

In my view to judicially sanction a cause of action seeking money damages for intentional infliction of emotional distress under the circumstances as presented here would stretch the ever expanding circle of judicially created liability to absurd limits and tend to further clog our courts which are already heavily congested and overburdened with cases of substance. Here, as previously noted, plaintiff's recourse is to file a complaint with the California State Bar for appropriate action.[5]

Accordingly, by reason of the foregoing, I would affirm the judgment (order sustaining the demurrer without leave to amend).

Respondents' petition for a hearing by the Supreme Court was denied April 7, 1977.

---

[5]It is noted that although plaintiff prays for $50,000 damages she alleges in the body of her complaint that her emotional distress lasted only for five days and during that period was alleviated by tranquilizers. Therefore, even if plaintiff had a good cause of action for intentional infliction of emotional distress the face of the complaint indicates it in no way belongs in the superior court. In addition, she could have further mitigated the duration and intensity of her claimed emotional distress by merely picking up a telephone and talking to a lawyer of her choosing or to one of the legal aid offices.