[Civ. No. 45633. First Dist., Div. Three. Apr. 29, 1981.]

ALBERT A. O'NEIL, Plaintiff and Appellant, v.
E. ROBERT CUNNINGHAM et al., Defendants and Respondents.

COUNSEL

Ricardo J. Hecht for Plaintiff and Appellant.

Robert C. Gebhardt, Deborah A. David, Michael P. Verna and Bronson, Bronson & McKinnon for Defendants and Respondents.

OPINION

**FEINBERG, J.**—On January 30, 1976, appellant Albert A. O'Neil filed a complaint for damages against the County of Alameda, Peter Carbone, Nadine Foreman, E. Robert Cunningham and Pacific Indemnity Company (Pacific). Approximately one year later, appellant filed a request for a dismissal without prejudice as to all defendants except Cunningham and Pacific, who are the respondents to this appeal. Respondents specially and generally demurred to the complaint pursuant

to Code of Civil Procedure section 430.10, subdivisions (e) and (f).[1] The demurrer was sustained with 30 days' leave to amend on the ground that the complaint failed to state a cause of action.

Appellant filed an amended complaint in one count, the material allegations of which are summarized below:

Appellant is an anesthesiologist, licensed to practice medicine in this state.

Defendant Alameda County operates Highland General Hospital.

Defendant Carbone is and has been employed by the county as chief of anesthesiology at Highland Hospital.

Defendant Foreman is and has been employed by the county as director of clinical and medical education.

Respondent Pacific was ·at all relevant times the malpractice insurance carrier for the county, and appellant believed that a contract between those parties required that Pacific provide malpractice insurance to physicians with whom the county had contracted to render services at Highland Hospital.

Respondent Cunningham is an attorney, licensed to practice in this state. Appellant believed that Cunningham had been retained by Pacific to perform legal services, as an independent contractor, for Pacific, the county and for the aforementioned physicians at Highland Hospital.

Pursuant to several contracts with the county, appellant served as a staff anesthesiologist at Highland Hospital from April 15, 1969, to mid-February 1975. During 1974, appellant was paid approximately $43,000.

Carbone and Foreman were in a position of authority over appellant. They had the power to assign duties to appellant and to cause the coun-

---

[1]Section 430.10, subdivision (e) provides: "The party against whom a complaint ... has been filed may object, by demurrer or answer as provided in Section 430.30, to the pleading on any one or more of the following grounds: ... (e) The pleading does not state facts sufficient to constitute a cause of action." Subdivision (f) provides the following ground for a demurrer: "The pleading is uncertain. As used in this subdivision, 'uncertain' includes ambiguous and unintelligible."

ty to terminate appellant's employment contract. Appellant believed that respondents were aware of these facts.

For many years, appellant has had blind spots on the macula of both eyes, but this defect does not, and has not, impaired appellant's ability to perform the visual functions related to and required in the proper performance of his professional duties.

Since August 1969, the director of the county's health care agency, Carbone and Foreman were aware of this defect.

Carbone and Foreman agreed to terminate appellant's contract with the county, and they acquired the means to act upon this agreement after a particular malpractice action was filed.

On August 29, 1972, a thyroidectomy was performed on Mrs. Bobby J. Gandy at Highland Hospital. Appellant supervised the administration of the anesthetic by an intern. The intern performed this task competently, requiring assistance only in the actual intubation, which was successfully performed by appellant. The administration of the anesthesia was uneventful, and the surgery was performed.

The next day, Mrs. Gandy encountered respiratory distress and brain damage which, it was claimed, rendered her totally, permanently physically incapacitated.

Mrs. Gandy, acting through her guardian, sued the county and all persons who rendered medical services in connection with her thyroidectomy and postoperative care, including appellant.

Respondent Pacific undertook control of the defense of Mrs. Gandy's suit, and, in so doing, assumed the obligation to deal fairly and in good faith with defendants while discharging its responsibilities.

Respondent Cunningham represented defendants in the Gandy suit. In so doing, Cunningham assumed a duty of undivided loyalty to the interests of defendants. When Cunningham agreed to represent those defendants, he also agreed to, and did, represent respondent Pacific, knowing that he would be representing clients with different and probably conflicting interests. However, Cunningham did not explain to any of the Gandy defendants, including appellant, the implications of this multiple representation and, therefore, none of the defendants were giv-

en the opportunity to evaluate their need for separate representation. Furthermore, Cunningham never told the Gandy defendants that he and Pacific took the position that anything done by them in connection with the Gandy case was absolutely privileged pursuant to Civil Code section 47. As a result of his failure to explain and to disclose, Cunningham was able to become, nominally, appellant's attorney while he was solely Pacific's lawyer and, with Pacific, gained an advantage over appellant in violation of the obligations imposed by Civil Code section 2228.

After becoming appellant's attorney, Cunningham learned from appellant about his visual defect. Later, Cunningham deliberately distorted the facts about the defect to appellant's detriment in order to benefit his client, Pacific.

On May 24, 1974, Cunningham wrote a letter to Pacific in order to persuade Pacific and the county to settle the Gandy suit within certain limits, thereby minimizing the financial loss which might otherwise be incurred by Pacific. The letter made the following reference to appellant's participation in the surgery: "... Surgery was performed by Dr. Fox, a Fourth Year Surgery Resident. The surgery was uneventful, except the anesthesiologist, who has a severe sight problem, had difficulty in intubating the plaintiff and required several attempts to do so. He also was not able to pass the esophageal stethoscope and therefore used a chest stethoscope...."

The statement gives the false impression that the difficulty in intubating Mrs. Gandy and the failure to pass the esophageal stethoscope resulted from appellant's sight problem, and that appellant experienced "untoward difficulty" in intubating Mrs. Gandy.

On June 20, 1974, Pacific wrote a letter to the director of the county's health care agency and enclosed a copy of Cunningham's letter. The object of the letter to the director was to persuade the county to authorize settlement of Mrs. Gandy's claim, thereby minimizing Pacific's financial loss.

Appellant was not told about these letters. Therefore, he was deprived of the opportunity to correct the "false impression" conveyed in Cunningham's letter and of the opportunity to indicate that the letter could damage appellant's contractual relationship with the county and his professional standing.

When the letters were sent, respondents knew that there was a likelihood that the contents could be used by persons ill disposed toward appellant in order to inflict emotional distress upon him and to damage his professional standing and contractual relationship with the county. The letters were transmitted in order to save Pacific money without concern for appellant's rights.

Carbone and Foreman became aware of the contents of Cunningham's letter and, on the basis of that letter:—Falsely accused appellant of having a visual handicap which interfered with his ability to perform in accordance with his contract, and—Threatened appellant with the loss of his license unless he terminated his contract and left the state.

During this time, Carbone and Foreman were aware that appellant was susceptible to emotional distress.

Despite the fact that the conduct described above caused appellant "intense emotional distress," appellant neither terminated his contract nor left the state. Consequently, Carbone and Foreman employed the statements in the Cunningham letter to cause the county's health services director to recommend that the county's board of supervisors cancel appellant's contract.

After learning that appellant had requested a full hearing by the board before any action was taken, Carbone and Foreman stopped assigning professional duties to appellant which "effectively destroyed . . . [appellant's] usefulness as a Staff Anesthesiologist, and thereby subjected . . . [appellant] to derision, humiliation and ostracism." As a direct and proximate result of this conduct, appellant abandoned his request for a hearing and gave the county written notice terminating his contract.

Appellant has been unable to obtain comparable work.

The amended complaint contained certain allegations regarding exemplary damages and concluded with a prayer for special, general and exemplary damages.

Though the amended complaint is captioned as a complaint for damages for "Outrageous Conduct; Negligence," it is obvious that the complaint sounds in defamation for the basis of the action is the alleged

defamatory statement in respondent Cunningham's letter.[2] Appellant concedes as much.

Respondents also demurred to the amended complaint pursuant to Code of Civil Procedure section 430.10, subdivisions (e) and (f). The second demurrer was sustained without leave to amend because appellant had failed to allege facts sufficient to state a cause of action, and the action was dismissed.

This appeal followed.

### The Issue

*Can the privilege of Civil Code section 47, subdivision 2[3] apply where an attorney allegedly defames his client during the course of a judicial proceeding?*

### Discussion

■ Appellant agrees that the issue is the effect of section 47, subdivision 2. As he puts it, the issue is whether "[a]n insurer and its lawyer are 'privileged' under section 47.2 to defame and injure an insured whom they have undertaken to defend." He does not distinguish between the "insurer and its lawyer" so that if the lawyer were "privileged" so was the insurer. We accept that.

For our purposes, we shall assume at this juncture that appellant's complaint states a cause of action absent the effect of section 47, subdivision 2.

Section 47, subdivision 2 provides in relevant part: "A privileged publication[4] . . . is one made—. . . 2. In any . . . (2) judicial proceeding, . . ."

---

[2]It is to be noted that appellant has not alleged in his complaint that either respondent breached any duty to him with regard to the Gandy action against appellant. According to the complaint, the breach consisted in respondent Cunningham's sending the letter containing the defamatory statement to the insurance company and the insurance company forwarding the letter to the hospital authorities, who were also defendants in the Gandy action, without consultation or approval of appellant.

[3]Hereafter, all references are to the Civil Code unless otherwise noted.

[4]Without intending to belabor the obvious, we point out that the phrase "privileged publication" is not used in the sense of a privileged communication within the meaning

While there are cases that have applied the privilege to defamatory publications made by attorneys,[5] we can find no case nor have we been cited to one where an attorney has allegedly defamed his client in the course of a judicial proceeding.

Appellant makes two arguments in support of his contention that section 47, subdivision 2, does not apply.

He argues that section 47, subdivision 2, "is based on the desire of the law to protect attorneys in their efforts to secure justice for their clients," citing *Friedman* v. *Knecht* (1967) 248 Cal.App.2d 455, 462 [56 Cal.Rptr. 540]. Because, appellant says, respondent Cunningham was acting adversely to appellant, his client, the protection afforded by section 47, subdivision 2, should not be "extended" to him.

Were the question one of "extending" the scope of section 47, subdivision 2, we might well agree with appellant. However, as we read section 47, subdivision 2, what appellant is asking us to do is not to "extend" but to carve out an exception from the section.

On its face, the *absolute* privilege of section 47, subdivision 2, with which we are concerned, addresses itself to a publication "made in any judicial proceeding." It does not address itself to either the defamer or to the defamed. On the other hand, in the same section 47, subdivision 2, the Legislature provided for a *qualified* privilege, as against the *absolute* privilege, in an action for divorce or separate maintenance, and there specified, inter alia, that the defamed person had to be one against whom no affirmative relief was sought in the action and the defamer was acting without malice and had reasonable and probable cause to believe the defamatory allegation to be true.[6] In section 47, subdivision

---

of division 8 of the Evidence Code dealing with privileges. The effect of section 47 is to immunize the maker of the "privileged publication" from any liability for defamation if the publication comes within the ambit of the several subdivisions of section 47. (See §§ 44, 45 and 46.) Thus, in an action *not* based on defamation, a publication otherwise admissible would not be inadmissible because it was "privileged" under section 47. (*Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405].

[5]*Izzi* v. *Rellas* (1980) 104 Cal.App.3d 254 [163 Cal.Rptr. 689]; *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592]; *Smith* v. *Hatch* (1969) 271 Cal.App.2d 39 [76 Cal.Rptr. 350].

[6]Section 47, subdivision 2, provides: "A privileged publication or broadcast is one made—

"  .   .   .   .   .   .   .   .   .   .   .   .   .   .

"2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official pro-

3, the Legislature created a qualified privilege and, in this instance, defined the defamer who could claim the qualified privilege.[7] Thus, it appears that when the Legislature intended to limit either the defamer or the defamed in connection with the claim of privilege, it said so.

In this connection, it is instructive to compare section 47, subdivision 2, as originally enacted in 1872 with its present form.

In 1872, section 47, subdivision 2, read: "A privileged publication is one made: . . . 2. In testifying as a witness in any proceeding authorized by law to a matter pertinent and material, or in reply to a question allowed by the tribunal." Section 47, subdivision 2, was amended in 1873-1874 and, as relevant to the case at bar, has been unchanged since.[8]

The contrast between the 1872 version and the 1873-1874 version of section 47, subdivision 2, is so striking as to suggest that the Legislature intended to insulate from any liability in defamation anybody who, in a judicial proceeding, said or wrote anything about anybody.

It is true that a certain judicial gloss has been placed upon the section so that it does not have quite the uninhibited result we ventured above. In *Royer v. Steinberg* (1979) 90 Cal.App.3d 490 [153 Cal.Rptr. 499], the court said that the qualifications on the absolute privilege

---

ceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2, (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure; provided, that an allegation or averment contained in any pleading or affidavit filed in an action for divorce or an action prosecuted under Section 137 of this code made of or concerning a person by or against whom no affirmative relief is prayed in such action shall not be a privileged publication or broadcast as to the person making said allegation or averment within the meaning of this section unless such pleading be verified or affidavit sworn to, and be made without malice, by one having reasonable and probable cause for believing the truth of such allegation or averment and unless such allegation or averment be material and relevant to the issues in such action."

[7]Section 47, subdivision 3, provides: "A privileged publication or broadcast is one made—

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"3. In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information."

[8]See Historical Note, 6 West's Annotated Civil Code (1954 ed.) section 47, page 188.

granted by section 47, subdivision 2, are that the publication has some connection or logical or reasonable relation to the proceeding and that the publication be made to achieve the object of the litigation. But those are the *only* qualifications. (*Id.*, at pp. 503-504; accord *Smith v. Hatch, supra*, 271 Cal.App.2d 39, 45-46; *Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 489 [104 Cal.Rptr. 650]; *Bradley v. Hartford Acc. & Indem. Co.* (1973) 30 Cal.App.3d 818, 824 [106 Cal.Rptr. 718]; *Spira v. Superior Court* (1976) 62 Cal.App.3d 33, 35 [133 Cal.Rptr. 24].)

There can be no question that respondent Cunningham's letter had a "connection" with the underlying lawsuit by Gandy against appellant. Neither can there be any question but that the letter was aimed to achieve the object of the Gandy litigation, namely, to settle it.

Appellant's second argument asserts that *Bradley, supra*, imposed a further requirement, namely, that the defamatory publication be made *"in furtherance of the litigation and to promote the interest of justice."* (*Bradley v. Hartford Acc. & Indem. Co., supra*, 30 Cal.App.3d at p. 826.) Obviously, appellant continues, it does not promote "the interest of justice" to permit an attorney to betray the trust reposed in him by his client. In essence, this is a refinement of his primary thesis.

We must confess that we are uncertain as to what the *Bradley* court meant when it said that the defamatory publication must "promote the interest of justice" to be accorded the absolute privilege. But, whatever it means, we are satisfied that it does not mean what appellant takes it to mean.

It seems reasonably certain that the Legislature did not immunize a defamer from liability for his defamation because it thought that a defamatory publication in a judicial proceeding promoted "the interest of justice." Section 47, subdivision 2, was enacted because the Legislature believed that there was a countervailing "public policy of affording the utmost freedom of access to the courts" (*Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393]) and this public policy was more important than permitting the defamed to recover from the defamer for his defamation.

Thus, in *Pettitt v. Levy, supra*, 28 Cal.App.3d 484, relied on in *Bradley*, the defamatory publication was alleged to be the submitting of a false or forged building permit to the City of Fresno, the court held,

with something less than pleasure, that the privilege of section 47, subdivision 2, applied even though filing a forged building permit might be a criminal act. And in *Kachig v. Boothe, supra,* 22 Cal.App.3d 626, the defamatory publication was certain perjurious testimony given by a witness in a judicial proceeding. "[W]ith considerable regret and dissatisfaction," the court concluded that, among other reasons, section 47, subdivision 2, foreclosed relief. (At p. 642.)

Thus, forgery and perjury have been protected as privileged publications, but we cannot conceive that forgery and perjury advance "the interest of justice."

While respondent Cunningham's alleged betrayal of his trust is to be deplored and may subject him to disciplinary action by the State Bar, it does not operate to deprive him of the immunity afforded by section 47, subdivision 2.

In this connection, we must advert to the case of *Kinnamon v. Staitman & Snyder* (1977) 66 Cal.App.3d 893 [136 Cal.Rptr. 321]. In *Kinnamon,* defendants, who were attorneys, wrote a letter in behalf of their client to plaintiff, demanding payment of a dishonored check given by plaintiff to defendants' client. The letter not only demanded payment but stated that writing a check with insufficient funds was a misdemeanor and defendants intended to file a criminal complaint against plaintiff. Plaintiff sued defendants for intentional infliction of emotional distress. A general demurrer to the complaint was sustained and the action dismissed. On appeal, a divided court reversed.

The court held that section 47, subdivision 2, did not apply. "The threat by an attorney to present criminal charges in order to obtain an advantage in a civil action is one which the Rules of Professional Conduct proscribe.... The threat thus cannot serve the purpose of litigation. It is a cause for discipline of the attorney [citations], a proposition totally inconsistent with a privileged status." (At p. 897.)

From our analysis of section 47, subdivision 2, it is clear that we must disagree with the *Kinnamon* court. If filing a forged building permit or giving perjured testimony are each privileged publications, it is difficult to rationalize why a publication that otherwise would be privileged is not privileged because the attorney uttering the publication violated a Rule of Professional Conduct.

### Conclusion

Appellant makes a persuasive argument that the absolute privilege of section 47, subdivision 2, should not apply to an attorney who defames his client. Perhaps it should not or perhaps there should be a qualified privilege. But these are policy questions that should be addressed to and resolved by the Legislature. The statute as written clearly embraces the situation at hand. As the Supreme Court recently put it in *People* v. *Chadd* (1981) 28 Cal.3d 739 [170 Cal.Rptr. 798, 621 P.2d 837], "[i]t is settled that '[W]hen statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation.]" (At p. 746.)

The judgment is affirmed.

Scott, Acting P. J.; and Barry-Deal, J., concurred.