BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE LIZ FIGUEROA, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
When a physician testifies as an expert in a civil proceeding regarding the applicable standard of medical care and whether the defendant has breached that standard, may the physician, on the basis of his or her testimony, be held liable in a subsequent tort action brought by the adverse party or be subject to professional discipline by the Medical Board of California?
 CONCLUSION
When a physician testifies as an expert in a civil proceeding regarding the applicable standard of medical care and whether the defendant has breached that standard, the physician may not, on the basis of his or her testimony, be held liable in a subsequent tort action brought by the adverse party, but may be subject to professional discipline by the Medical Board of California if the testimony constitutes unprofessional conduct.
 ANALYSIS
The question presented for our analysis concerns testimony given by a physician for the plaintiff or the defendant in a medical malpractice suit, where the physician is called upon to provide an expert opinion[1]
as to the appropriate standard of medical care and whether the defendant has breached that standard. In Flowers v. Torrance Memorial HospitalMedical Center (1994) 8 Cal.4th 992, 1001, the Supreme Court described such testimony in the following terms:
". . . `"The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circum — stances is within the common knowledge of the layman." [Citations.]' "
We are asked whether such expert testimony may provide the basis for (1) a subsequent tort action brought by the adverse party or (2) professional discipline by the Medical Board of California ("Board"). We conclude that the testifying physician may not be held liable in a subsequent lawsuit brought by the adverse party, but may be subject to professional discipline by the Board if the testimony constitutes unprofessional conduct.
1. Subsequent Tort Action By The Adverse Party
Civil Code section 47 states:
"A privileged publication or broadcast is one made:
". . . . . . . . . . . . . . . . . . . . . . . . . .
"(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . . .
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
The immunity that attaches to statements made in a judicial proceeding (Civ. Code, § 47, subd. (b)(2)) is commonly referred to as the "litigation privilege." (See Moore v. Conliffe (1994) 7 Cal.4th 634,641.) "Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication [made in a judicial or quasi-judicial proceeding], whether or not it amounts to a publication [citations], and all torts except malicious prosecution. [Citations.]" (Silberg v. Anderson (1990) 50 Cal.3d 205,211-212; accord, Moore v. Conliffe, supra, 7 Cal.4th at p. 641; see Budwin v. American Psychological Assn. (1994) 24 Cal.App.4th 875,880-883; O'Neil v. Cunningham (1981) 118 Cal.App.3d 466, 472-475.)
The purposes of the litigation privilege include preventing litigants and witnesses from being subsequently harassed by derivative tort actions, encouraging open channels of communication and the presentation of evidence, encouraging attorneys to zealously protect their clients' interests, enhancing the finality of judgments, and avoiding unending rounds of litigation. (Silberg v. Anderson, supra, 50 Cal.3d at pp. 213-214.) The litigation privilege has been referred to as "the backbone to an effective and smoothly operating judicial system." (McClatchyNewspapers v. Superior Court (1987) 189 Cal.App.3d 961, 970.)
A physician's testimony as an expert witness in a medical malpractice suit, whether on behalf of the plaintiff or the defendant, concerning the applicable standard of medical care and whether the defendant has breached that standard would clearly come within the litigation privilege of Civil Code section 47, subdivision (b)(2). (See Moore v. Conliffe, supra, 7 Cal.4th at pp. 640-658.) Accordingly, we conclude that when a physician testifies as an expert in a civil proceeding regarding the applicable standard of medical care and whether the defendant has breached that standard, the physician may not, on the basis of his or her testimony, be held liable in a subsequent tort action brought by the adverse party.
2. Professional Discipline By The Board
Next, we consider whether the court testimony in question may subject the physician to professional discipline by the Board. Preliminarily, we note that the litigation privilege of Civil Code section 47, subdivision (b)(2), would not provide immunity from possible discipline by the Board. As the court in Budwin v. American Psychological Assn.,supra, 24 Cal.App.4th 875, observed:
"Whatever the reach of section 47(b), it has not been extended to preclude professional disciplinary liability. (See Silberg, supra, 50 Cal.3d at pp. 218-219 [recognizing that § 47(b) bars tort actions, but that `other remedies . . . exist' to help deter injurious communications during litigation, including State Bar disciplinary proceedings]; Doctors' Co. Ins. Services v. Superior Court (1990)225 Cal.App.3d 1284, 1294 [same]; O'Neill v. Cunningham (1981)118 Cal.App.3d 466, 476 [same]; Izzi v. Rellas (1980) 104 Cal.App.3d 254,264 [same]; Umansky v. Urquhart (1978) 84 Cal.App.3d 368, 373 [same];Friedman v. Knecht (1967) 248 Cal.App.2d 455, 462 [same].)" (Id. at p. 881, fn. omitted.)
Turning to the duties and responsibilities of the Board, we find that the Board is responsible for administering the Medical Practice Act (Bus. Prof. Code, §§ 2000
-2521),[2] including taking action against a physician for unprofessional conduct. (§2234.) "Unprofessional conduct" is defined by the Legislature in section 2234
as follows:
". . . In addition to other provisions of this article, unprofessional conduct includes, but is not limited to, the following:
"(a) Violating or attempting to violate, directly or indirectly, assisting in or abetting the violation of, or conspiring to violate any provision of this chapter.
"(b) Gross negligence.
"(c) Repeated negligent acts. . . .
"(d) Incompetence.
"(e) The commission of any act involving dishonesty or corruption which is substantially related to the qualifications, functions, or duties of a physician and surgeon.
"(f) Any action or conduct which would have warranted the denial of a certificate.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . ."
In Griffiths v. Superior Court (2002) 96 Cal.App.4th 757, the Court of Appeal recently reviewed the conditions under which the Board may discipline a physician for unprofessional conduct. There, the physician (Dr. Griffiths) claimed that the conduct in question, three drunk driving offenses, could not be the subject of professional discipline since the conduct did not involve the practice of medicine and the conduct had not harmed any of his patients. The court responded in part:
"Administrative proceedings to revoke, suspend, or impose discipline on a professional license are noncriminal and nonpenal; they are not intended to punish the licensee, but rather to protect the public. [Citation.]. . . .
 "The Medical Board, through its Division of Medical Quality, has authority to investigate, to commence disciplinary actions, and to take disciplinary action against a physician's license based on unprofessional conduct as defined in the Medical Practice Act. [Citations.] This authority to determine a party's fitness to engage in a business or profession derives from the state's inherent power to regulate the use of property to preserve the public health, morals, comfort, order, and safety. [Citations.]
". . . . . . . . . . . . . . . . . . . . . . . . . . . .
"`[A] statute constitutionally can prohibit an individual from practicing a lawful profession only for reasons related to his or her fitness or competence to practice that profession.' [Citation.] Thus the state can impose discipline on a professional license only if the conduct upon which the discipline is based relates to the practice of the particular profession and thereby demonstrates an unfitness to practice such profession. `There must be a logical connection of licensees' conduct to their fitness or competence to practice the profession or to the qualifications, functions, or duties of the profession in question.' [Citation.]
". . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
"For a nexus to exist between the misconduct and the fitness or competence to practice medicine, it is not necessary for the misconduct forming the basis for discipline to have occurred in the actual practice of medicine. `[The Medical Board] is authorized to discipline physicians who have been convicted of criminal offenses not related to the quality of health care.' [Citation.]
"Substantial legal authority provides that conduct occurring outside the practice of medicine may form the basis for imposing discipline on a license because such conduct reflects on a licensee's fitness and qualifications to practice medicine. (Windham v. Board of Medical QualityAssurance, supra, 104 Cal.App.3d at pp. 469-470 [income tax fraud reflects on physician's qualifications to practice medicine]; Krain v.Medical Board (1999) 71 Cal.App.4th 1416, 1424-1425 [guilty plea to charge of felony soliciting subornation of perjury is substantially related to qualifications as physician]; Matanky v. Board of MedicalExaminers (1978) 79 Cal.App.3d 293, 297-301 [felony conviction for filing false, fraudulent insurance claims provides sufficient basis for license discipline].) A physician who commits income tax fraud, solicits the subornation of perjury, or files false, fraudulent insurance claims has not practiced medicine incompetently. Nonetheless that physician has shown dishonesty, poor character, a lack of integrity, and an inability or unwillingness to follow the law, and thereby has demonstrated professional unfitness meriting license discipline. Although referring to a real estate license, the following quotation applies with even greater force to a medical license: `[T]here is more to being a licensed professional than mere knowledge and ability. Honesty and integrity are deeply and daily involved in various aspects of the practice.' [Citation.]
"Griffiths argues that he cannot be disciplined because no evidence showed his drinking and driving convictions resulted in any harm to patients. If accepted, this argument would have a serious implication for license discipline proceedings. In essence, it would prohibit the imposition of discipline on a licensee until harm to patients had already occurred. We reject this argument because it overlooks the preventative functions of license discipline, whose main purpose is protection of the public [citation], but whose purposes also include prevention of future harm [citation] and the improvement and rehabilitation of the physician [citation]. To prohibit license discipline until the physician-licensee harms a patient disregards these purposes; it is far more desirable to discipline before a licensee harms any patient than after harm has occurred.
". . . . . . . . . . . . . . . . . . . . . . . . . . . . .
". . . Griffiths's three alcohol-related convictions are indications of alcohol abuse that affects his private life. We need not wait until his alcohol abuse problem begins to affect his practice of medicine." (Id. at pp. 768-773, fn. omitted.)
Accordingly, the Board may discipline a physician for unprofessional conduct even though the actual misconduct does not constitute the practice of medicine or cause harm to individual patients, as long as the misconduct relates to the physician's fitness or competence to practice medicine. Conceivably, such misconduct would include court testimony given on behalf of a plaintiff or defendant as to the appropriate standard of medical care and whether the defendant has breached that standard. (See Austin v. American Ass'n of Neurological Surgeons, supra,
253 F.3d at pp. 971-974; Joseph v. Board of Medicine (D.C.App. 1991)587 A.2d 1085, 1086-1091.) Whether the court testimony in a particular malpractice suit may be found to constitute misconduct would depend upon all the relevant circumstances.
We conclude that when a physician testifies as an expert in a civil proceeding regarding the applicable standard of medical care and whether the defendant has breached that standard, the physician, on the basis of his or her testimony, may be subject to professional discipline by the Board if the testimony constitutes unprofessional conduct.
[1] "A person is qualified to testify as an expert if he has special knowledge, skill, experience, training or education sufficient to qualify him as an expert on the subject to which his testimony relates. . . ." (Evid. Code, § 720, subd. (a); see Brown v. Colm (1974)11 Cal.3d 639, 643-644.) The judge presiding over the trial is responsible for determining whether a witness qualifies as an expert. (See Evid. Code, § 720; In re Joy M. (2002) 99 Cal.App.4th 11,18; Austin v. American Ass'n of Neurological Surgeons (7th Cir. 2001)253 F.3d 967, 972-973.)
[2] All references hereafter to the Business and Professions Code are by section number only.