SIMMONS ET AL., APPELLANTS, *v.* CLIMACO ET AL., APPELLEES.

(No. 51484 — Decided
December 29, 1986.)

*Kronenberg & Kronenberg* and *Jacob A. H. Kronenberg,* for appellants.

*Gallagher, Sharp, Fulton & Norman, Alan M. Petrov* and *Gary L. Nicholson,* for appellees.

CORRIGAN, J.    This appeal results from the trial court's granting of the motion for summary judgment of defendants John R. Climaco and Climaco, Seminatore, Lefkowitz & Kaplan Co., L.P.A.

The plaintiffs, George R. Simmons and James F. Thomas, former agents of the Department of Labor, filed their complaint alleging defamation on December 8, 1983. The three counts of the complaint arose out of three letters authored by Climaco and sent to various government officials on behalf of a client.

The letters asserted that the plaintiffs had acted improperly during the course of their investigation of Climaco's client, Jackie Presser, President of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Both plaintiffs were employed by the Department of Labor, Office of Organized Crime and Racketeering, as investigators.

John R. Climaco was retained to represent Presser during the ongoing criminal investigation. The letters at issue here were written to officials in both the Department of Labor and the Department of Justice with the hope that the government would terminate the investigation. Throughout the investigation a grand jury was sitting in the Northern District of Ohio. The investigation resulted in indictments of two of Presser's associates, Nardi and Friedman, for their roles in a ghost employee payroll scheme. They were convicted, but their convictions were later vacated.

The first letter dated December 8, 1982 outlined in great detail alleged wrongful government activity directed at Presser and others. The letter was sent to the United States Attorney General, the United States Secretary of Labor, the Director of the Federal Bureau of Investigation, the United States Attorney for the Northern District of Ohio, attorneys for the Cleveland Strike Force, and other officials.

The second letter, directed to the Deputy Chief of the Organized Crime and Racketeering Section of the Department of Justice and dated February 2, 1983, indicated that the alleged unfair government investigation activity was being conducted by Thomas and Simmons.

The third letter directed to the Office of the Solicitor of the Department of Labor raised further allegations of improper government activity on the part of Thomas and Simmons.

The plaintiffs contended that as a result of the letters they lost credibility among their colleagues and felt compelled to leave their positions with the Department of Labor and to commence employment with a different investigative agency of the federal government.

The defendants filed an answer on March 5, 1984. Discovery commenced. On June 11, 1984, the plaintiffs filed an amended complaint attaching the letters which are the center of this controversy. The defendants filed an answer to the amended complaint on June 12, 1984.

On August 14, 1985, the defendants filed a motion for summary judgment on the ground that Climaco's letters were

protected by either an absolute or qualified privilege. On October 16, 1985, the plaintiffs filed a brief in opposition. On November 20, 1985, the defendants filed a reply brief. On December 20, 1985 the defendants' motion was granted and the plaintiffs then appealed.

The appellees argued below that no defamation suit could be brought based on the letters as they were protected by either an absolute or qualified privilege. An attorney has an absolute immunity against a libel and slander action for statements made representing a client in the course of litigation, either in the pleadings, briefs, or in oral statements to the judge and jury, so long as the defamatory matter may possibly bear some relation to the judicial proceeding. *Surace* v. *Wuliger* (1986), 25 Ohio St. 3d 229, 25 OBR 288, 495 N.E. 2d 939; *Justice* v. *Mowery* (1980), 69 Ohio App. 2d 75, 23 O.O. 3d 100, 430 N.E. 2d 960. See *Erie County Farmers' Insurance Co.* v. *Crecelius* (1930), 122 Ohio St. 210, 171 N.E. 97; *Battig* v. *Forshey* (1982), 7 Ohio App. 3d 72, 7 OBR 85, 454 N.E. 2d 168.

The Ohio Supreme Court in *Surace* v. *Wuliger, supra,* recently held that the doctrine of absolute privilege in a judicial proceeding bars a cause of action on an allegedly defamatory statement made in a pleading which bears some reasonable relation to the proceeding in which it appears. In so holding, the court reaffirmed the policy considerations at stake stating:

"In conclusion, we wish to re-emphasize the public policy considerations underlying the doctrine of absolute privilege in judicial proceedings in the test we have formulated today. The most basic goal of our judicial system is to afford litigants the opportunity to freely and fully discuss all the various aspects of a case in order to assist the court in determining the truth, so that the decision it renders is both fair and just. While the imposition of an absolute privilege in judicial proceedings may prevent redress of particular scurrilous and defamatory allegations that tend to harm the reputation of the person defamed, a contrary rule, in our view, would unduly stifle attorneys from zealously advancing the interests of their clients in possible violation of the Code of Professional Responsibility, and would clog court dockets with a multitude of lawsuits based upon alleged defamatory statements made in other judicial proceedings. The proper balance that must be made is that which we have set forth today. We believe that the standard requiring that the alleged defamatory statement bear some reasonable relation to the judicial proceeding in which it appears is the proper restraint which should be made in order to insure the free and open discussion of competing interests that is a necessary part of our adversarial system of justice." *Id.* at 235, 25 OBR at 294, 495 N.E. 2d at 944.

The court then applied the absolute privilege to a non-party who had brought suit based on allegations in a pleading.

In this case we are confronted with the question whether this absolute privilege extends to pre-indictment statements and writings made by an attorney on behalf of his client relevant to an ongoing grand jury investigation focused on that client. We hold that it does.

The 3 Restatement of the Law 2d, Torts (1977), Section 586, specifically includes such preliminary stages in litigation. That section provides at 247:

"§ 586. Attorneys at Law

"An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."

The foregoing section is made applicable to criminal proceedings as well. 3 Restatement of the Law 2d, Torts

(1977) 247, 248, Section 586, Comment *b*. This protection exists in the context of a grand jury investigation regardless of the outcome. The section is limited to communications bearing some relation to a proceeding that is contemplated in good faith and under serious consideration.

Although this section has not been applied in this context by Ohio courts, courts in other jurisdictions have extended the scope of this privilege. In *Lerette* v. *Dean Witter Organization, Inc.* (1976), 60 Cal. App. 3d 573, 131 Cal. Rptr. 592, the court applied the privilege to a letter sent in pretrial stages by defense counsel to the plaintiff. The court held that any attorney retained by a client expecting to be a party to particular litigation comes within the privilege. See, also, *Sriberg* v. *Raymond* (1976), 370 Mass. 105, 345 N.E. 2d 882; *Libco Corp.* v. *Adams* (1981), 100 Ill. App. 3d 314, 426 N.E. 2d 1130.

The letters at issue here were published by an attorney retained to protect his client during an ongoing criminal investigation into the client and several of his business dealings. The letters outlined various instances wherein he felt his client's rights were being prejudiced or violated by government agents. The letters were directed to government officials who were in a position to exercise a degree of control over the investigation or the agents conducting it. In such circumstances, the same policy concerns which warrant absolute immunity in judicial proceedings are present. An attorney retained during the pre-indictment period may not serve his clients interests as zealously were he concerned with personal liability in a later defamation proceeding. For the foregoing reasons, we affirm the judgment of the trial court.

*Judgment affirmed.*

NAHRA, P.J., and ANN MCMANAMON, J., concur.