Bruce BUSCHEL, Plaintiff,

v.

METROCORP., d/b/a Philadelphia Magazine, Elliott Kaplan, and Carl A. Solano, Esquire, Defendants.

Civil Action No. 96–CV–3048.

United States District Court,
E.D. Pennsylvania.

Sept. 17, 1996.

Paul J. Drucker, Paul J. Drucker, P.C., Philadelphia, PA, for Plaintiff.

Nancy J. Gellman, James J. Rohn, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, for Defendants.

Wilbur L. Kipnes, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Carl A. Solano.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

Before the court is the Defendant Carl A. Solano's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendant's motion is **GRANTED.**

### I. FACTS [1]

This case arises out of a dispute over the existence of an oral contract between plaintiff, Bruce Buschel ("Buschel"), and defendant, Elliott Kaplan ("Kaplan"), the Editor of the *Philadelphia Magazine* *("Philadelphia")*. Buschel filed his four count complaint on April 18, 1996 against three defendants: (1) MetroCorp, the publisher of *Philadelphia;* (2) Kaplan; and, (3) Carl A. Solano ("Solano"), a partner in Schnader Harrison Segal & Lewis, who acted on behalf of the Schnader firm and provided legal counsel to *Philadelphia.*[2] Buschel seeks compensatory and punitive damages against all defendants for defamation (Count I), invasion of privacy (Count II), tortious interference with an existing contract (Count III), and civil conspiracy (Count IV).

Sometime in December of 1994, Buschel, a freelance journalist, met with Kaplan to discuss *Philadelphia* 's interest in publishing an article on Harry Jay Katz, a well-known Philadelphian and head of the city's Film and Video Commission. Compl. at ¶ 11. Although in the past Buschel had been interested in writing a story on Katz, Buschel declined Kaplan's offer. *Id.* In March of 1995,

after a highly publicized incident drew media attention to Katz, Kaplan offered again to purchase an article by Buschel on Katz. *Id.* at ¶ 12. Although Kaplan disagrees, Buschel contends that, at that time, he did not reach any agreement with Kaplan as to the purchase and exclusive publication rights of the article. *Id.* at ¶ 14. Nevertheless, Buschel subsequently met with a *Philadelphia* staff member to discuss her involvement with Katz. *Id.* at ¶ 13.

Shortly thereafter, Buschel advised Kaplan that he was negotiating with *Esquire* magazine for the sale of publication rights to the Katz article. *Id.* at ¶¶ 16–17. On April 27, 1995, Kaplan sent Buschel a written contract specifying the details of what Kaplan claimed was the parties' March oral agreement. *Id.* at ¶ 18. The contract detailed the amount of payment and the deadline for submission of the article. However, because he had entered into an agreement with *Esquire,* Buschel rejected Kaplan's contract. *Id.* at ¶¶ 18–19. On May 3, 1995, Buschel and *Esquire* signed a written contract for the exclusive publication rights to the article. *Id.* at ¶ 17.

On May 15, 1995, Solano, on behalf of *Philadelphia,* wrote a letter to both Buschel and the two editors of *Esquire,* William Tonelli (Articles Editor) and Edward Kosner (Editor-in-Chief), that notified each recipient of *Philadelphia's* alleged oral contract with Buschel. *Id.* at ¶ 20; Def.'s Mot. to Dismiss at 2–3. In each letter, Solano made clear that *Philadelphia* would pursue its legal rights against both Buschel and the editors of *Esquire* arising from Buschel's contractual arrangement with *Philadelphia.*[3] Solano enclosed a copy of each letter to both parties.

---

**1.** As discussed below, the court accepts as true all allegations in the Complaint for the purpose of deciding Defendant Solano's motion. *See infra* II.A.

**2.** In his original complaint, Buschel also named Schnader Harrison Segal & Lewis as an additional defendant. However, the parties filed a Stipulation on July 12, 1996, dismissing the complaint against the Schnader firm.

**3.** Specifically, Solano wrote to Kosner and Tonelli, in relevant part:

Mr. Buschel is and has been under contract with *Philadelphia Magazine* to write the article

for *Philadelphia....* Please be advised that *Philadelphia Magazine* will consider any effort by *Esquire* to obtain the Buschel article for its own use to be a tortious interference with the contractual arrangement between *Philadelphia Magazine* and Mr. Buschel. *Philadelphia Magazine* intends to enforce its legal and contractual rights to the Katz article.

Compl. at ¶ 20. Solano's letter to Buschel relayed a similar message:

Your work on the Katz story clearly was done pursuant to an agreement with *Philadelphia Magazine* that you would write the story for *Philadelphia,* not some other publication. Any

In addition to these letters, Solano also referenced and enclosed in his letter to *Esquire* a copy of a letter Kaplan wrote to Buschel dated May 15, 1995. Kaplan's letter recounted the negotiations between the parties and emphasized the existence of his previous oral contract with Buschel. Def.'s Mot. to Dismiss at 4; Compl. at ¶ 22. Buschel focuses on the last sentence of Kaplan's letter as essential to the basis of his complaint: "This assignment clearly belongs to us, and I resent your trying to put me in the position where I am supposed to feel guilty because you want to commit a moral transgression against me and my magazine." Compl. at ¶ 22; Letter from Solano to Buschel of 5/15/95 at 2–3.

Subsequent to *Esquire*'s receipt of the letter from Solano, *Esquire* terminated its contract with Buschel to pay for and publish the article on Katz. Compl. at ¶ 23. Based on the foregoing facts, Buschel claims that Solano defamed his character, invaded his privacy, and tortiously interfered with his contract with *Esquire*. Solano now seeks a dismissal of Buschel's four count complaint for failure to state a claim upon which the court can grant relief.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to dismiss a complaint that fails to state a claim upon which relief can be granted. Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a); 5A *Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure* § 1357 (2d ed. 1990). When the pleading fails to meet this liberal standard, it is subject to dismissal under Rule 12(b)(6). The court's inquiry is limited to the content of the complaint.

For purposes of Rule 12(b)(6), the district court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences therefrom in a light most favorable to the plaintiff. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 109, 99 S.Ct. 1601, 1612–13, 60 L.Ed.2d 66 (1979) (quoting *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975)); *United States v. Witco Corp.,* 853 F.Supp. 139, 141 (E.D.Pa.1994) (citing *Schrob v. Catterson,* 948 F.2d 1402, 1405 (3d Cir.1991)). Accordingly, this Court must consider "whether relief could be granted ... 'under any set of facts that could be proven consistent with the allegations.'" *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 71 (3d Cir.1994) (quoting *National Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 249, 114 S.Ct. 798, 799, 127 L.Ed.2d 99 (1994)). If the court cannot identify any cause of action, dismissal is ordinarily proper.

Thus, the ultimate question is not whether Buschel will prevail, but whether Buschel could prove any set of facts in support of his claim that would entitle him to relief.

### B. Count I: Defamation

In Count I, Buschel alleges that Solano defamed him by forwarding to *Esquire:* (1) a letter sent to Buschel by Solano that "falsely accused plaintiff Buschel of breaching a contract and committing the crime of conversion;" and, (2) a letter sent to Buschel by Kaplan that "accused Buschel of a breach of journalistic ethics," and suggested that "he [had] committed a moral transgression." Compl. at ¶¶ 21–22; Pl.'s Resp.Mot.Dismiss at 6. Buschel argues that Solano's decision to enclose the additional letters was made with malice, with the specific intent to harm, and without privilege or justification.

Solano contends that the communications are privileged. This privilege operates to provide attorneys a higher degree of freedom in actively pursuing the interests of their clients. *See* RESTATEMENT (SECOND) OF TORTS § 586 cmt. a (1977). Because he acted within the bounds of this privilege,

---

attempt now to write this story for *Esquire* would be a clear breach of your contract with *Philadelphia* and an unlawful conversion of materials and work product provided to you by *Philadelphia Magazine* ... Accordingly, *Phila-* delphia Magazine will be in a position to seek damages if you proceed with your stated intention to break your contract with *Philadelphia* and to write the story instead for *Esquire.* Def.'s Mot. to Dismiss at 3–4; Compl. at ¶ 21.

Solano is protected from liability arising from Buschel's allegation of defamation. Accordingly, Defendant's Motion to Dismiss as to Count I will be granted.

The test for determining whether an absolute privilege applies is explained in *Post v. Mendel*, 510 Pa. 213, 221, 507 A.2d 351, 355 (1986) as follows: "the protected realm [of privilege] is composed only of the communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." Although, as *Post* suggests, the privilege is not a "license for extrajudicial defamation," the privilege is available to communications "preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding." *Id.* at 222, 507 A.2d at 356 (quoting RESTATEMENT (SECOND) OF TORTS § 586 (1977)); *see also Lerette v. Dean Witter Org., Inc.*, 60 Cal.App.3d 573, 131 Cal. Rptr. 592 (1976) (libel action barred where defamatory material complained of was contained in communication by an attorney written prior to a proposed judicial proceeding and bore a logical relationship to the judicial proceedings). Thus, the privilege is not limited to formal proceedings, but includes situations in which an attorney pursues a client's potential cause of action "under less formal circumstances." *Smith v. Griffiths*, 327 Pa.Super. 418, 427, 476 A.2d 22, 25 (1984).

This privilege attaches only if the attorney contemplates the judicial proceeding in good faith and seriously considers litigation. RESTATEMENT (SECOND) OF TORTS § 587 cmt. e (1977); *Smith*, 327 Pa.Super. at 427, 476 A.2d at 25; *Sriberg v. Raymond*, 370 Mass. 105, 345 N.E.2d 882 (1976) (defamatory statement sent by an attorney absolutely privileged since litigation was seriously contemplated in good faith). Even if litigation is seriously considered, the attorney is permitted to send a defamatory communication only to persons with a direct interest in the proposed proceeding. *Post*, 510 Pa. at 223, 507 A.2d at 357. When applicable, this privilege protects attorneys from liability in an action for defamation "irrespective of his purpose in publishing the defamatory matter, his belief in its truth, or even his knowledge of its falsity." RESTATEMENT (SECOND) OF TORTS § 586 cmt. a (1977).

■ Solano contends that *Philadelphia* contemplated litigation against both *Esquire* and Buschel, but "elected to write rather than litigate." Def.'s Mot. to Dismiss at 7. Solano forwarded copies of letters that were both relevant and material to *Philadelphia's* contemplated litigation. The letters informed each potential defendant, *Esquire* and Buschel, of *Philadelphia's* belief in the existence of its oral contract with Buschel. They also served to inform each recipient of the factual basis upon which *Philadelphia* would rely to prove the oral contract with Buschel. Finally, Solano sent the letters only to the two editors of *Esquire* and Buschel personally. Each of these parties had a direct interest in the contemplated breach of contract proceeding.

Despite analyzing the facts in a light most favorable to the Buschel, it seems clear that Solano was merely pursuing the interests of his client, *Philadelphia,* within the bounds of the absolute privilege.

### C. Count II: Invasion of Privacy—False Light

In Count II, Buschel alleges that Solano invaded his privacy by publicizing false statements of alleged criminal and unethical conduct about Buschel. Because the absolute privilege discussed in Part II.B, *supra,* applies equally in causes of action for invasion of privacy, Count II will also be dismissed.

■ Pennsylvania courts have considered false light invasion of privacy as "closely allied to the law of defamation." *Weinstein v. Bullick,* 827 F.Supp. 1193, 1202 (E.D.Pa. 1993). As a result, "courts have applied to false light claims some of the same standards that govern defamation actions." *Fogel v. Forbes, Inc.,* 500 F.Supp. 1081, 1088 (E.D.Pa. 1980); RESTATEMENT (SECOND) OF TORTS § 652F (1977). Specifically, Pennsylvania has extended the absolute privilege to invasion of privacy actions. *Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950 (1988), *appeal denied,* 521 Pa. 630, 558 A.2d 532 (1989). Therefore, Solano's privileged

communications to the editors of *Esquire* and Buschel prior to contemplated judicial proceedings cannot serve as the basis of Buschel's invasion of privacy claim.[4]

### D. Count III: Tortious Interference with Existing Contractual Relationship

In Count III, Buschel alleges that Solano maliciously and intentionally interfered with the existing contractual relationship between himself and *Esquire*. Buschel claims that when Solano wrote to the editors of *Esquire*, he intended to thwart *Esquire*'s efforts to publish Buschel's article. Because Buschel has not pled any facts which suggest that Solano acted outside the scope of the relevant privilege, Count III will also be dismissed.

To set forth a legally sufficient claim for intentional interference with contraction relations, the plaintiff must plead four elements:

(1) the existence of a contractual ... relation between the complainant and a third party;

(2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, ...;

(3) the absence of privilege or justification on the part of the defendant; and

(4) the occasioning of actual legal damage as a result of the defendant's conduct.

*Hays Run Assoc. v. Browning–Ferris, Inc.*, Civ.A. No. 96–1021, 1996 WL 460044 at *4 (E.D.Pa. Aug. 9, 1996); *Total Care Sys., Inc. v. Coons*, 860 F.Supp. 236, 240 (E.D.Pa.1994); *Pelagatti v. Cohen*, 370 Pa.Super. 422, 434, 536 A.2d 1337, 1343 (1987), *appeal denied*, 519 Pa. 667, 548 A.2d 256 (1988).

■ Buschel's allegations are sufficient with respect to elements (1) and (2). However, Buschel has not satisfactorily pled that Solano acted without privilege. Indeed, the complaint itself shows that Solano was acting to protect what he believed to be the legally protected interest of his client. Section 773 of the Restatement (Second) of Torts accords a privilege to persons who, in good faith,

believe that their legally protected interests "may otherwise be impaired or destroyed by the performance of the contract." *Schulman v. J.P. Morgan Inv. Management, Inc.*, 35 F.3d 799, 810 (3d Cir.1994) (quoting RESTATEMENT (SECOND) OF TORTS § 773 (1977)).

### E. Count IV: Civil Conspiracy

■ In Count IV, Buschel alleges that Solano conspired with the additional defendants, MetroCorp. and Kaplan, to defame him, to invade his privacy, and to tortiously interfere with his existing contract with *Esquire*. Because Buschel has failed to state claims for defamation, invasion of privacy, and tortious interference with an existing contract, his civil conspiracy claim must necessarily fail as well.

There can be no cause of action for civil conspiracy absent a cause of action for the underlying act. *Pelagatti*, 370 Pa.Super. at 432, 536 A.2d at 1342. Accordingly, Count IV will also be dismissed.

### III. CONCLUSION

Because of the privilege that Solano enjoys, Buschel cannot prove any set of facts in support of his claims for defamation, invasion of privacy, tortious interference with an existing contractual relation, or civil conspiracy, that would entitle him to relief. Therefore, the court will grant Solano's motion to dismiss Counts I, II, III, IV. An appropriate order will be entered.

### ORDER

AND NOW, this 17th day of September, 1996, upon consideration of the Defendant Solano's Motion to Dismiss Counts I, II, III, and IV of Plaintiff's Complaint, and the Plaintiff's Response thereto, and the Defendant's Reply Memorandum thereto, IT IS ORDERED that the Defendant's Motion is GRANTED, and Counts I, II, III, and IV are dismissed as to Defendant Solano.

---

4. In light of this determination, the court need not discuss the alternative contention that Solano's actions did not amount to the degree of publicity required for an invasion of privacy action.