OPINION
Plaintiff-appellant James Krakora appeals from the decision of the Mahoning County Common Pleas Court which granted summary judgment in favor of defendants-appellees Attorney Gerald Gold and his law firm of Gold, Rotatori Schwartz Co., L.P.A. For the following reasons, the judgment of the trial court is affirmed.
In 1985, appellees defended Gregory DeChant, a murder suspect who was given a polygraph examination by the Bureau of Criminal Investigation (BCI). Appellant was the polygraph examiner. Appellees filed a motion to suppress the polygraph results on the ground that defendant was unrepresented by counsel and on the ground that appellant's examination results were unreliable. Appellees called an expert to testify as to the questionable methodology used by appellant. In 1986, the motion to suppress the results was granted on the basis of lack of counsel but refused on the ground of unreliability.
In 1995, appellees represented insurance claimants who were attempting to collect insurance after their business caught fire. The insurance company suspected the claimants of arson. As such, the claimants took a polygraph examination in October 1995 which was administered by William Evans. The insurance company wanted BCI to review the results of the examination so they asked the fire marshall to make a referral. Thereafter, appellant, who was still working at BCI, reviewed the examination results and disagreed with one of the four results produced by Mr. Evans. Thus, the insurance company requested that the claimants take polygraph examinations administered by appellant.
In response, appellees sent two letters to the insurance company's attorney. The first letter, dated April 12, 1996, provided:
 "I really don't mean to posture by these letters but this is a long time to resolve a loss. If only to get some orderliness to these proceedings, a law suit is in order.
 We still intend to file on April 26. There is no withdrawal of our polygraph offer, however. I never for a moment considered Mr. Krakora as one to do an independent polygraph. His testimony in a prior case regarding his methods and approach have taken him off our list. (See State v. DeChant, Elyria, Ohio, middle 80's)."
The second letter, dated April 18, 1996, read:
 "This is in response to your letter of April 16, 1996. First of all, Mr. Pyle and I have both talked to Mr. Evans who tells us he has talked to Mr. Krakora about the test results and that he, Mr. Evans, understood that Mr. Krakora agreed that there was no evidence of deception indicated in the test. I believe that Mr. Evans is telling us the truth, and until I see a report from Mr. Krakora which can be reviewed by Mr. Evans, I am unwilling to do anything which will drag out this matter even further and deny my clients payments which have been due and owing them for many months. It will be a fairly simple matter after I file the lawsuit to take Mr. Krakora' s deposition.
 When I suggested to you that you have Mr. Evans' test results reviewed in November of 1995, I was unaware that Mr. Krakora was still working for BCI. My last experience with Mr. Krakora in court revealed serious shortcomings in his ability to properly administer and analyze polygraph test results. For your reference, I am enclosing the complete transcript of a February 18, 1986 hearing in Lorain County Common Pleas Court in the case of State of Ohio v. Gregory DeChant, Case No. 31692, concerning the test which Mr. Krakora seriously mishandled. You will note in the transcript that Mr. Lynn Marcy, a nationally recognized polygraph expert, testified for the defense and expressed grave reservations about the procedures Mr. Krakora followed.
 Since the time of the DeChant case, computerized testing procedures have been adopted by leading polygraph examiners. If Mr. Krakora really misread Mr. Evans' test results, I cannot trust him to conduct an accurate test himself using either his old unacceptable methods or the new computerized methods."
In September 1996, appellant filed a defamation suit against appellees based upon the content of these two letters. Appellees asked for summary judgment on various grounds. On June 29, 1998, the trial court granted summary judgment for appellees without specifying the basis. The within timely appeal followed.
Appellant sets forth three assignments of error, the first of which contends:
 "The court erred if it's [sic] basis for granting appellees' Summary Motion was based on judicial immunity or judicial privilege."
Appellees motion for summary judgment argued that the letters at issue are protected by an absolute and a qualified privilege. In addressing absolute privilege, appellant argues that the privilege will not protect an attorney from a defamation action by a third party where there did not exist a pending judicial action.
Ohio courts have long-recognized a doctrine of absolute privilege in judicial proceedings which acts to bar defamation actions. See, e.g., Mauk v. Brundage (1903), 68 Ohio St. 89; ErieCounty Farmers' Ins. Co. v. Crecelius (1930), 122 Ohio St. 210;Bigelow v. Brumley (1941), 138 Ohio St. 574. This doctrine asserts that an allegedly defamatory statement made in the course of a judicial proceeding is not actionable where the statement bears some reasonable relation to the matters at hand. Surace v.Wuliger (1986), 25 Ohio St.3d 229, 233 (holding that statements in a written pleading are absolutely privileged). Whether this privilege applies in a given case is a question of law. Id.
The fact that the allegedly defamed person was not a party to the judicial proceeding does not mitigate against the application of an absolute privilege. Id. at 234. An absolute privilege applies to allegations referring to parties and non-parties alike. Id. Hence, the question becomes whether a communication from one attorney to another, while representing a client before the institution of a lawsuit, is protected from defamation litigation under the absolute privilege for communications relating to judicial proceedings.
The doctrine of absolute privilege extends to communications that occur at "every step in the [judicial] proceeding, from beginning to end." M.J. DiCorpo, Inc. v. Sweeney (1994), 69 Ohio St.3d 497,505-506 (holding that all statements made in an affidavit or initial complaint filed with the prosecutor's office are absolutely privileged). The privilege has been held to apply to extrajudicial communications between parties, attorneys, and witnesses in cases where the suit had been filed before the communication occurred. Michaels v. Berliner (1997), 119 Ohio App.3d 82,88 (stating that a letter from an attorney to the opposing attorney alleging conflict of interest is absolutely privileged); Fallang v. Cormier (1989), 63 Ohio App.3d 450, 452
(stating that communications made between an expert and an attorney before the expert's deposition were absolutely privileged).
Appellees point to the Eighth Appellate District's decision inSimmons v. Climaco (1986), 30 Ohio App.3d 225. In that case the court held that letters sent by an attorney to various government officials were absolutely privileged even though an indictment had not yet been filed against the attorney's client. Id. at 228. The court reasoned that because the attorney reasonably expected that his client would be indicted by the grand jury and because the attorney believed that certain government agents were using improper investigation techniques, the attorney could communicate to proper parties in order to zealously represent his client without fear of a later defamation lawsuit. Id. The Simmons court and many others have favorably cited Restatement of Law 2d, Torts (1977), Section 586, which provides:
 "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."
See, also, Wexler v. Jewish Hosp. Assoc. of Cincinnati (Oct. 26, 1983), Hamilton App. No. C-820654, unreported, 7 (praising Section 586 and stating one reason for its application of the privilege was because proceedings in the trial court were imminent when the allegedly defamatory letter was written).
Moreover, we note that federal courts have often applied Section 586 to interpret state law relative to the issue of pre-litigation communications. For instance, the Sixth Circuit Court of Appeals cited Section 586 in interpreting Ohio law in regards to impending litigation in Theiss v. Scherer (C.A. 6, 1968), 396 F.2d 646, 175-76. Also, in General Elec. Co. v.Sargent Lundy (C.A. 6, 1990), 916 F.2d 1119, 127, the court held that there was an absolute privilege for communications preliminary to a proposed judicial proceeding if the communication relates to a proceeding that is contemplated in good faith and under serious consideration. See, also, Sriberg v.Raymond (C.A. 1, 1976), 544 F.2d 15, 16, (holding that an attorney is absolutely privileged to communicate with a prospective defendant if the communication relates to judicial proceeding that is under "serious contemplation").
The policy behind the absolute privilege for an attorney's letters written prior to the filing of seriously contemplated litigation is that attorneys should be free to zealously advocate the rights of their clients in all stages of a case. Buschel v.Metrocorp (E.D. Pa. 1996), 957 F. Supp. 595, 598. Furthermore, individuals should be encouraged to privately resolve their disputes without resort to judicial process. Conservative Club ofWashington v. Finklestein (D.D.C. 1990), 738 F. Supp. 6, 14. This requires the ability to discuss matters with opposing counsel that are reasonably related to an anticipated lawsuit.
In the case at bar, appellees' letters disclosed that, within two weeks a lawsuit would be filed by claimants against their insurance company for collection of the proceeds of a fire insurance policy. It is clear that there is evidence that appellees were writing to opposing counsel in anticipation of an impending lawsuit. Moreover, the portions of the letters that appellant alleges are defamatory were written about matters that were reasonably related to the anticipated judicial proceeding. The claimants had consented to polygraph examinations which resulted in favorable readings. Nonetheless, because appellant reviewed the readings and disagreed with one out of the four interpretations, the insurance company desired that appellant administer new polygraph examinations to the claimants. However, appellees claimed to have had a bad experience with appellant in a prior case and had previously hired an expert witness to rebut appellant's conclusions.[1] As a result, appellees refused to allow appellant to test their clients and set forth to opposing counsel their rationale for their position. The communications at issue were limited in scope and were only published to the necessary parties. Appellant admits that he is the one who further communicated the publications to his superiors at BCI. For all of the foregoing reasons, the content of letters from appellees to opposing counsel were protected from future defamation suits by the doctrine of absolute privilege. Therefore, this assignment of error is without merit.
However, we will continue our analysis since we believe appellant's argument is meritless for an alternative reason. That is, and assuming arguendo that the doctrine of absolute privilege is inapplicable, there exists a qualified or conditional privilege which allows publication of defamatory material if said publication is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned."Hahn v. Kotten (1975), 43 Ohio St.2d 237, 244. In the case at bar, we are dealing with the private duty of an attorney to zealously represent his client. The elements of qualified privilege as applicable to this case are: the good faith making of a statement that is limited in scope to uphold a private interest and that is made on a proper occasion in a proper manner to proper parties. Id. A qualified privilege may be lost if the person claiming the privilege made statements with actual malice.Jacobs v. Frank (1991), 60 Ohio St.3d 111, 114. Actual malice exists if the alleged defamer knew the statement was false or recklessly disregarded the falsity of the statement. Id. at 116. Reckless disregard is established by clear and convincing evidence that the defendant published the statements despite a high degree of awareness of probable falsity. Id. at 118.
Here, the fact that letters were sent and received, and the content of the letters is not in dispute. Additionally, appellant makes no argument that the elements of qualified privilege are inapplicable. His only argument in regards to this issue is that actual malice exists. Because the circumstances of the alleged defamatory statements are not in dispute, the determination of whether qualified privilege applies is a question of law that can be disposed of by an entry of summary judgment in the appropriate case. A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council (1995), 73 Ohio St.3d 1, 7.
Reviewing the evidence in the light most favorable to appellant as required by Civ.R. 56 (C), it is apparent that evidence of actual malice is lacking. There is absolutely no evidence that appellees knew that the letters contained falsities. In fact, appellees rely on the past testimony of an expert they once hired as evidence for their lack of trust in appellant's ability. Enclosing a copy of the transcript from the suppression hearing where appellees expert testified also lessened any inference that appellees had a high degree of awareness that their statements were probably false. Appellees were merely protecting their clients' favorable polygraph results from attack by an examiner with whom appellees had an unfavorable past experience. Explaining to opposing counsel the motivation behind appellees refusal to subject their clients to an examination by appellant was necessary to avoid the appearance that they were backing out of the idea of an independent evaluation. Indeed, refusal without explanation would likely result in misunderstanding and/or further polarization between opposing counsel.
In addition, appellees relationship with the parties to whom he sent the allegedly defamatory letters offer further clarity in justifying the communication. See Hahn, supra at 246. Appellees were attempting to settle an insurance claim for their clients before filing a lawsuit against the insurance company. Communications between an insurer and its insureds are often held to be privileged. Hahn, supra at 247. In our case, the communication flowed from the insureds' attorney, i.e. representative, to the insurer's attorney. The free flow of information during settlement negotiations is an occasion worthy of protection. A B-Abell, supra at 9, citing Jacobs. This policy is just as strong whether the settlement negotiations occur before or after a complaint has been filed. In accordance, the communications at issue were privileged because there is no evidence of actual malice on the part of appellees.
Appellant's second and third assignments of error provide:
 "The trial court erred if it's [sic] basis for granting appellee's Summary Motion was based upon a finding that Plaintiff was a public figure, requiring actual malice. Alternatively, a prima facie case for actual malice existed."
 "The court erred if it's [sic] basis for granting appellee's Summary Motion was based on Plaintiff's being a private figure who could not satisfy the elements of defamation."
Because we determined that summary judgment was properly granted on the basis that appellees' letters are protected by absolute privilege and/or qualified privilege, it is unnecessary for this court to address appellant's remaining two assignments of error. Pursuant to App. R. 12 (A) (1) (c), these assignments have been rendered moot.
For the foregoing reasons, the trial court's entry of summary judgment is hereby affirmed.
Donofrio, J., Waite, J., concurs.
APPROVED:
 _________________________________ JOSEPH J. VUKOVICH, JUDGE
[1] In the prior case, the trial court suppressed the polygraph results on other grounds. On appeal, the appellate court refused to rule on the defendant's cross-assignment regarding the polygraph results because it upheld suppression on the ground of lack of counsel. State v. DeChant (Aug; 6, 1986), Lorain App. No. 4015 unreported, 3.