JOURNAL AND ENTRY OPINION
Plaintiff-appellant Charles Lang appeals from the trial court's decisions granting the defendant-appellee Gregory Fahlman's motion for summary judgment and denying the appellant's motion for summary judgment as to liability.
On October 3, 1996, Lang filed this action against Drew Trimble-Weber, Distinctive Lighting Corp. (Distinctive), Thomas O. Callaghan, Thomas O. Callaghan Co., L.P.A., and Gregory Fahlam. On February 24, 1997, the trial court granted the motion to dismiss filed by defendants Trimble-Weber and Distinctive Lighting Corp. This ruling has never been challenged on appeal. The trial court granted the motions to dismiss of the remaining defendants and an appeal followed. In Lang v. Trimble-Weber (Dec. 11, 1997), Cuyahoga App. No. 72516, unreported, this court reversed the trial court's order and remanded the case to the trial court for further proceedings.
Subsequent to the first appeal, the appellant and the appellee filed cross motions for summary judgment. On October 14, 1998, the appellant voluntarily dismissed defendants Thomas O. Callaghan and Thomas O. Callaghan Co., L.P.A. On November 17, 1998, the trial court denied the appellant's motion for summary judgment and granted the appellee's motion for summary judgment. It is from the rulings on the motions for summary judgment that the appellant filed this appeal.
Richard Weber and Drew Trimble-Weber were divorced in 1993.[1]
Appellant Charles Lang was Richard Weber's attorney during the divorce. Prior to the divorce, Richard Weber and Drew Trimble-Weber operated a business called Distinctive Lighting Corporation. It was agreed between the two that the proceeds from Distinctive Lighting would be used for the benefit of their children. Subsequent to the divorce, Richard Weber began operating Deep River Corporation, an allegedly competing entity. Deep River was owned by Charles Lang, Richard Weber and Jim Hallstrom.
In his deposition, appellee Fahlman testified that he spoke to several of Distinctive's customers in February or March 1995. As a result of these conversations, the appellee became convinced that someone was taking business away from Distinctive. From one of the customers Fahlman learned that no payments were due to Distinctive, but that it continued to make payments to Deep River (Fahlman Depo. T. 69-70). The customer stated that it had been advised to make checks payable to Deep River (Fahlman Depo T. 70). The appellee knew at some point that Deep River was owned by Charles Lang, Richard Weber, and Jim Hallstrom and that many of Deep River's customers were the same as the ones Distinctive Lighting had. (Fahlman Depo T. 75.) Ms. Trimble-Weber identified the address given by the customer for Deep River as the address of Mr. Lang (Fahlman Depo. T. 109). The appellee observed one or two invoices made out to Distinctive Lighting on the top and marked payable to Deep River on the bottom. (Fahlman Depo T. 75, 86.) Additionally, Mr. Fahlman assisted Ms. Trimble-Weber in setting up an Excel spread sheet to analyze the 1994 sales for Distinctive.
At some point, Trimble-Weber consulted an attorney named Thomas Callaghan. After a series of meetings which did not resolve the issues between Richard Weber and Drew Trimble-Weber, Richard Weber asked his brother, Robert Weber, to discuss these issues with Callaghan. By the end of August 1995, the negotiations were at a standstill (Callaghan Depo. T. 203). In early September 1995, Callaghan, Trimble-Weber, her father, and Gregory Fahlman, the appellee, met and discussed the case. At his deposition, Callaghan testified:
 Q: Did you discuss at this early September meeting that you would be preparing a lawsuit or a complaint?
 A: We discussed whether or not that would be advisable, and so we did discuss it, yeah.
Q: And what was the conclusion?
 A: That we would draft a complaint so that the parties — the other side would understand the nature of the complaint, 
fully understand our position, and hopefully that that would — that that would reinstill the possibilities of — reinstitute the possibilities of settlement.
Callaghan Depo. T. 203.
Mr. Fahlman acknowledged attending the meeting held at Mr. Callaghan's home in September 1995. He was unable to recall the specifics of this meeting and was unable to recall that he contributed any comments of substance (Fahlman Depo. T. 132). The appellee was at the meeting only to support Ms. Trimble-Weber (Fahlman Depo. T. 139). The appellee testified that he and Ms. Trimble-Weber had discussions regarding the matters contained in the lawsuit, and while he did express his advice and opinions, he was not instrumental in making decisions (Fahlman Depo. T. 119) As for discussions regarding settlement, Mr. Fahlman informed Ms. Trimble-Weber, "You need to do what you need to do. And I support whatever decision you make. It's your decision." (Fahlman Depo. T. 121.)
The appellee testified that he was faxed a copy of the cover letter which was sent to Mr. Robert Weber and that the cover letter indicated that a complaint was attached (Fahlman Depo. T. 136). Mr. Fahlman stated that he did not see the draft complaint (Fahlman Depo. T. 137). The appellee testified that there was no need for him to be privy to the draft complaint "Because it's not my case." (Fahlman Depo. T. 139.) Ms. Trimble-Weber did not fax him a copy of the draft complaint (Fahlman Depo. T. 139). The first time he was given the draft complaint was when he was served with the complaint for this case (Fahlman Depo. T. 143). Fahlman did know that Charles Lang was someone who would be named in the action and he knew from the cover letter that the complaint was being sent to Robert Weber (Fahlman Depo. T. 143). The appellee shredded his copy of the cover letter (Fahlman Depo. T. 143).
Robert Weber affirmed that he received a copy of the draft complaint on November 6, 1995, and that he immediately informed the appellant. The lawsuit naming the appellant as a defendant was filed in the Geauga County Court of Common Pleas on November 22, case number 95M880.[2] The appellant affirmed that the statements contained in the complaint were untrue and that Robert Weber was never authorized to act on his behalf or represent him.
The appellant sets forth one assignment of error:
 THE TRIAL COURT ERRED IN GRANTING FAHLMAN'S CROSS-MOTION FOR SUMMARY JUDGMENT (T.d. 38) AND IN DENYING LANG'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF LIABILITY ONLY (T.d. 36).
The appellant argues that there is no genuine issue of fact that Fahlman defamed his good name, reputation, and character and that the court erred in both denying his motion for summary judgment on the issue of liability and in granting the appellee' s motion for summary judgment. The appellant asserts that the sending of the draft complaint to Robert Weber, which contained untrue defamatory statements regarding him, was a publication. The appellant acknowledges that the appellee did not personally published the libelous complaint, but he asserts that Fahlman was part of a civil conspiracy to libel him and thus is responsible for the acts of anyone in the group. The appellant also argues that the appellee was not privileged to publish the defamatory complaint.
Appellate review of summary judgment is de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102; Brown v. Scioto Bd. ofCommrs. (1993), 87 Ohio App.3d 704. An appellate court applies the same test as the trial court. Zaslov v. The May Dept. StoresCo. (Oct. 1, 1998), Cuyahoga App. No. 74030, unreported. Summary judgment is appropriately rendered when no genuine issue as to any material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; it appears from the evidence that reasonable minds can come but to one conclusion; and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Zivich v. Mentor Soccer Club
(1998), 82 Ohio St.3d 367; Turner v. Turner (1993), 67 Ohio St.3d 337, citing to Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, and Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A court is permitted to grant a motion for summary judgment where all of the tests provided in Civ.R. 56 are met. See Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323.
The Supreme Court, in A B-Abel Elevator Co. v. Columbus/Cent.Ohio Bldg. Constr. Trades Counsel (1995), 73 Ohio St.3d 1, defined libel as a false-written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or profession. Where any one element of the critical elements is not established, the trial court may grant summary judgment. Brite Metal Treating, Inc. v. Schuler (May 13, 1993), Cuyahoga App. No. 62360, unreported.
In the case sub judice, an attorney, his client, the client's father and the man who is now the client's husband all met to discuss the filing of a lawsuit. The attorney then drafted a complaint against the client's ex-husband and the ex-husband's attorney. The attorney then sent the draft complaint to the brother of the ex-husband. Shortly after this mailing, the complaint was filed in the court of common pleas. Assumingarguendo, that the contents of the draft complaint were libelous as to the ex-husband's attorney, Mr. Lang, and that each and every element of the tort of libel was adequately supported as required under Civ.R. 56 in the appellant's motion for summary judgment, this court must turn to the issues of: 1) whether or not an absolute privilege prevents the appellant from any recovery; and, 2) whether or not the elements of civil conspiracy have been met.
Ohio Courts have long recognized the doctrine of absolute privilege in judicial proceedings acts to bar defamation claims.Surace v. Wuliger (1986), 25 Ohio St.3d 229; West v. Kysela (Jan. 13, 2000), Cuyahoga App. No. 75594, unreported. This doctrine holds that an allegedly defamatory statement made in the course and scope of a judicial proceeding is not actionable where the statement bears some reasonable relation to the matters at hand.Hecht v. Levin (1993), 66 Ohio St.3d 458. The question of whether absolute privilege applies in a given case is necessarily one of law for the court to determine. Surace, supra. Here, the circumstances of the publication are not in dispute and there is no question but that the draft complaint bears `some relationship to' the subject matter of the libel.
This court notes that the absolute privilege or immunity for statements made in a judicial proceeding extends to every step in the proceeding, from beginning to end. M.J. DiCorpo, Inc. v.Sweeney (1994), 69 Ohio St.3d 497, 506. Pursuant to the Restatement of the Law 2d, Torts (1977) 25, Section 586, this court has found that the privilege attaches prior to the filing of a lawsuit. Restatement of the Law 2d, Torts (1977) 25, Section 586 states:
 An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding. (Emphasis added.)
See Simmons v. Climaco (1986), 30 Ohio App.3d 225; Urban v.Fulton (Dec. 19, 1985), Cuyahoga App. No. 49921, unreported.
While the cases in which this court has adopted Section 586 of the Restatement of Torts 2d are not directly on point, this section has, in fact, been adopted by this court. The appellant is reminded that the subject matter of the Restatement of Torts 2d is torts, and torts are civil causes of action. It would seem patently absurd to hold that the Restatement of Torts is applicable to a criminal action, but is not applicable to a libel action. Therefore, applying Restatement of the Law 2d, Torts (1977) 25, Section 586; Simmons, supra; and, Urban, supra, this court finds that Mr. Callaghan[3] was privileged to send a draft copy of the complaint to Mr. Robert Weber.
Next, this court must consider the elements of civil conspiracy, which in Ohio has been held to be "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415; Williams v. Aetna Finance Co. (1998), 83 Ohio St.3d 464,475. In Gosden v. Louis (1996), 116 Ohio App.3d 195,220, the court held that "in a way not competent for one alone" means that if one person could lawfully commit an act, then that act committed by two or more persons cannot support a conspiracy claim, no matter how malicious the conspirators, or how great the resulting injury.
There is no allegation or evidence that the appellee personally published the draft complaint. Additionally, this court has found that Mr. Callaghan was privileged to send the draft complaint to Robert Weber. Because the act of sending the draft complaint to Mr. Robert Weber was a lawful act, pursuant to Gosden, supra, the appellant has failed to meet his burden of proving the existence of a civil conspiracy. Absent publication by the appellee, the claim of libel against the appellee must fail. The trial court properly denied the appellant's motion for summary judgment on the issue of liability, and, likewise, properly granted the appellee's motion for summary judgment.
The appellant's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
LEO M. SPELLACY. J., CONCURS:
DIANE KARPINSKI, P.J., CONCURS IN JUDGMENT ONLY.
 ________________________ JAMES D. SWEENEY, JUDGE.
[1] Trimble-Weber and Fahlman were married in July, 1997.
[2] This court also notes that in Trimble-Weber v. Weber
(1997), 119 Ohio App.3d 402, the Geauga appellate court upheld the trial court's granting motion for summary judgment in favor of a third party defendant Zellmer Gruber.
[3] In a footnote, the appellant asserts that Mr. Callaghan was not registered to practice law in the State of Ohio at the time he published and filed the complaint. In a pleading filed in Geauga County Common Pleas Case number 95M880 Mr. Callaghan admitted that he was not registered. However, the appellant herein failed to present any evidence that Mr. Callaghan had been suspended from practice by the Ohio Supreme Court. See Gov. Bar R. VI, (6)(A)(B).